STATE of Wisconsin, Plantiff-Respondent,
v.

Kenneth JAWORSKI, Defendant-Appellant.†

Court of Appeals

*No. 86–0112–CR. Submitted on briefs July 30, 1986.—Decided
November 12, 1986.*

(Also reported in 400 N.W.2d 29.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Michael Yovovich*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follotte*, attorney general and *Sharon Ruhly*, assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   Kenneth Jaworski was convicted of five counts of second-degree sexual assault as a repeater, in violation of secs. 940.225(2) and 939.62, Stats. On appeal, Jaworski contends that there was insufficient evidence of the use or threat of force or violence to support conviction on counts two through five. He also claims that the trial court committed prejudicial error in providing three prosecution witnesses' written state-

ments to the jury, at the jury's request, during its deliberations. We affirm the judgment of conviction, concluding that the jury could reasonably find that the initial threat of violence carried over to the subsequent acts and that any error in providing the statements to the jury was harmless.

Jaworski was charged with sexually assaulting S.H., a fellow inmate at the Racine county jail, on five occasions from November 21 to 26, 1983. S.H. testified that on November 21, the first day he was jailed, Jaworski offered him help with his court case, sat on S.H.'s bed rubbing his shoulders for a minute or two, then went to his own cell, returning with a law book, a pack of cigarettes and a candy bar. Jaworski then told S.H. to put the blanket up over the doorway, a practice permitted in the jail to allow inmates to use the toilet in privacy. S.H. did so, believing that they would be smoking marijuana, which he was willing to do. Jaworski sat on S.H.'s bed and rubbed his shoulders some more, then told him to lie down and started rubbing S.H.'s buttocks. When S.H. objected, Jaworski put his hand on S.H.'s throat and said, "If you want me to get violent, I'll get violent with you." S.H. testified that he became terrified and submitted to anal intercourse.

On the next day, S.H. telephoned his brother and told him something drastic had happened to him and asked him to contact his mother and probation officer. S.H. was reluctant to say what had happened, but when his brother guessed, he acknowledged that he had been raped.

The following day, November 23, Jaworski came to S.H.'s cell and said, "Let's get down to business." S.H. testified that again he was "scared, petrified," and therefore agreed to have anal intercourse. The same

thing occurred on the next three days, November 24 to 26. On the 26th, a guard became suspicious, pulled the blanket away and found Jaworski lying face down on top of S.H., with his erect penis near S.H.'s buttocks. The guard testified that S.H. was crying.

S.H. did not claim that Jaworski expressly threatened him with violence after the first day. He asserted that on each day he submitted because he was scared. He also stated that Jaworski threatened to tell other inmates and S.H.'s family members and friends what had happened, to make S.H. look bad.

Jaworski testified that S.H. consented to sexual intercourse and was "happy, smiling and agreeable" during the encounters. Jaworski also presented testimony by jail personnel that S.H. never complained to them, requested to be locked in his cell or relocated, or pressed the emergency button in his cell, which was within reach of his bed. There was additional testimony that S.H. was seen playing cards with Jaworski, in a seemingly friendly manner.

Jaworski was convicted of one count of second-degree sexual assault for each day on which a sexual encounter occurred. He repeatedly moved to dismiss counts two through five on the ground that there was no evidence of use or threat of violence on November 23, 24, 25 or 26.[1] The trial court refused to dismiss, finding a basis in the evidence upon which a jury could conclude that S.H. participated on those dates out of fear because he had been threatened initially and that renewed threats of violence on each date need not occur to support a verdict of guilty.

---

[1] Section 940.225(2)(a), Stats., defines second-degree sexual assault as sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence.

Jaworski asserts that the prosecution is required to prove each charge separately and that the elements of each charge must be separately determined by the jury. This is correct. *See Harrell v. State,* 88 Wis. 2d 546, 559–60, 277 N.W.2d 462, 467 (Ct. App. 1979). However, we reject Jaworski's argument that, since use or threat of force or violence is an element of second-degree sexual assault, the state must therefore establish a separate threat for each count charged.

What must be established in this case, pursuant to the language of sec. 940.225(2)(a), Stats., is that on each date charged the defendant had sexual intercourse with S.H. without S.H.'s consent, *by use or threat of force or violence.* The crucial inquiry is whether on each date sexual intercourse was achieved by threat of violence.

"Threat" is not defined in the statute. The word is defined in Webster's as "an expression of an intention to inflict evil, injury, or damage on another." Webster's Third New International Dictionary 2382 (1976). The message conveyed by a threat is determined in part by the context in which it occurs. *See State v. Woods,* 117 Wis. 2d 701, 732, 345 N.W.2d 457, 473 (1984).

The context of the threat in this case was a county jail, where the two parties were confined in the same cellblock. S.H., who was only twenty at the time, claimed that when he objected to Jaworski's sexual advances, Jaworski, a larger and older inmate, grabbed him by the throat and said, "If you want me to get violent, I'll get violent with you." Two days later, and on the following three mornings, Jaworski entered S.H.'s cell and allegedly said, "Let's get down to business." S.H. testified that he submitted to Jaworski on each date because he was afraid. Several other inmates also testified to having received the impression that S.H. was

afraid of Jaworski and that Jaworski was dominant towards S.H.

A reasonable trier of fact could well conclude, on this evidence, that the initial threat of violence lingered on the latter dates and that under the circumstances S.H. would have demonstrated a singular lack of intelligence to have ignored the unstated threat, quite possibly inciting Jaworski to carry it out in concrete fashion. Part of S.H.'s fear may also have been attributable to Jaworski's alleged threats to tell other inmates as well as S.H.'s family and friends what had happened. However, that fact does not preclude a finding that the original threat of violence continued to weigh upon S.H. and caused him to cooperate out of fear for his safety.[2]

---

[2] Jaworski claims that *Harrell v. State*, 88 Wis. 2d 546, 277 N.W.2d 462 (Ct. App. 1979), supports his contention that the initial threat could not, as a matter of law, have carried over for the next five days. *Harrell* addressed whether separate sexual assault charges were multiplicitous when two assaults occurred while the victim was under continuing threats during an ongoing course of criminal conduct. The *Harrell* court stated that "a factor, although not necessarily determinative, in deciding whether successive sexual assaults are separate acts is the use or threat of force against the victim and the repeated danger which the victim faces." *Id.* at 560, 277 N.W.2d at 467. The *Harrell* court concluded that "each act of sexual intercourse by the defendant is analytically separated by considerations of fact and time." *Id.*

*Harrell* did not address whether an initial threat of violence can carry over to subsequent acts not part of the immediate course of conduct. However, although talking of the "repeated danger" the victim faces during successive assaults, the *Harrell* court did not speak of "repeated threats" as relevant to multiple charges, even though such repeated threats were made in that case. Even if the court meant that the victim was threatened before each assault, it stated that this factor was not necessarily determinative as to whether separate acts could be charged. *Id.* Thus, we conclude that

We hold, therefore, that the trial court did not err in refusing to dismiss counts two through five. Whether a threat of violence existed on the dates charged was a finding within the province of the jury.

Jaworski's next contention is that the trial court committed prejudicial error in allowing three written statements to go into the jury room at the jury's request during its deliberations.

The statements were made to the police by three Racine county jail inmates shortly after the incidents in question. These witnesses testified for the prosecution at trial. Portions of the statements were used at trial to refresh the witnesses' recollection or to impeach their testimony; however, the statements were not read to the jury. During the jury deliberations, the jury requested the written statements. Over defense objections, the trial court allowed the statements to go to the jury room after excising portions containing hearsay.

Jaworski claims that this action emphasized the statements of three prosecution witnesses to the exclusion of the trial testimony. He cites *Payne v. State*, 199 Wis. 615, 227 N.W. 258 (1929), and *Franklin v. State*, 74 Wis. 2d 717, 247 N.W.2d 721 (1976), in support of his contention that it was error to allow the statements to go to the jury room.

The supreme court stated in *Payne*:

> The conduct of a trial should be fair and impartial and advantage to either side should be avoided. . . . While it is held that the matter of permitting exhibits to be taken to the jury room is a matter resting in

---

*Harrell* does not foreclose the possibility that a single initial threat may be found to have a continuing coercive effect on a victim who is assaulted on separate occasions.

the discretion of the trial court, attention should be paid to the nature of the exhibits. Generally there could be no harm in permitting a jury to refresh its memory with reference to the contents of a written instrument by an examination of the instrument.

*Payne*, 199 Wis. at 629, 227 N.W. at 263 (citation omitted). The court continued:

Where, however, the testimony bearing on one side of a controversy is in the form of a deposition or other written statement, and the testimony on the other resting entirely on parol evidence given in the court, it is obvious that to permit a jury to take the written portion of the testimony to the jury room, compelling them to rely upon their memories for the testimony on the other side, gives one side of the controversy an undue advantage, and it would seem plain that such exhibits should not be permitted to be taken to the jury room.

*Id.* at 629–30, 227 N.W. at 263. In a similar vein, the supreme court has disapproved sending a defendant's taped confession into the jury room, in part because of the danger of overemphasis of the confession relative to testimony given from the witness stand. *See Franklin*, 74 Wis. 2d at 724–25, 247 N.W.2d at 725.

The general principle that it is inequitable to allow one side to make its case with written evidence while the other side must rely on the jury's recollection of oral testimony was again acknowledged in *State v. Rutchik*, 116 Wis. 2d 61, 79–80, 341 N.W.2d 639, 648 (1984). In *Rutchik*, however, the supreme court held that while the better practice would be to read rather than give the jury a statement it has requested, other considerations allowed the court to conclude that there was insufficient prejudice to require reversal. *Id.* at 80, 341 N.W.2d at

648. Specifically, the court noted that the jury apparently had a particular purpose for requesting the statement, which was to test defense counsel's suggestions that the witness' knowledge of facts implicating the defendant was due to the facts' having been "fed" to the witness by the police officer taking the statement. *Id.*

As *Rutchik* indicates, the "better practice" in the present case would have been to read the requested statements to the jury rather than to send them to the jury room. However, we fail to see that Jaworski was prejudiced. The statements, once hearsay portions had been deleted, were essentially no more than a repetition of the testimony the witnesses gave at trial.[3] Moreover, the trial court did not on its own initiative place unfair emphasis on one side of the controversy by sending the written statements with the jury as it retired to deliberate. Rather, the jury apparently had a particular reason for wishing to see the statements and therefore requested them, just as they also asked to hear S.H.'s testimony reread regarding why he submitted to Jaworski. *Cf. Rutchik*, 116 Wis. 2d at 80, 341 N.W.2d at 648.

Further, the jury cannot be said to have been "compell[ed] to rely upon their memories for the testimony on the other side," *see Payne*, 199 Wis. at 630, 227 N.W. at 263. As evidenced by its request that certain trial

---

[3] The only portion of any of the statements which did not essentially duplicate the trial testimony was the observation by witness Berman that Jaworski and S.H. smelled of excrement when they came out of S.H.'s cell one day.

Jaworski contends that this evidence was extremely prejudicial. However, since Jaworski's defense was not that acts of anal intercourse did not occur, but rather that they were consensual, and since the jury was carefully instructed that such acts between consenting adults would not be criminal under Wisconsin law, any error in not excising that portion of the statement is harmless.

testimony be reread, as well as its request for the written statements, this was a jury which understood that it need not rely upon its memory alone for any portion of the testimony but could request portions as to which it was unsure or had a particular interest. The jury chose to request, among other evidence, the statements in question which were damaging to Jaworski's defense. This is not a case where the jury has been prejudiced by having undue weight placed upon certain evidence by the court; the jury itself considered certain evidence important enough to request it during its deliberations. Under these circumstances, we hold that the trial court did not commit prejudicial error in allowing the statements to go to the jury room.[4]

*By the Court.*—Judgment affirmed.

[4] Jaworski also raises three *pro se* arguments on appeal. His double jeopardy claim, based on his having been placed in segregation in the jail as a result of the course of conduct which is the basis for these criminal proceedings, was correctly rejected by the trial court. *See State v. Killebrew,* 115 Wis. 2d 243, 340 N.W.2d 470 (1983). His remaining contentions, relating to the alleged violation of his rights under the first and eighth amendments while in administrative segregation in the jail, are now moot as to this criminal action since he is no longer in that facility. Jaworski's remedy, if any, would lie in a civil action against the Racine county jail administration.