STATE of Wisconsin, Plaintiff-Respondent,

v.

Christopher W. HINES, Defendant-Appellant.

Court of Appeals

*No. 92-1886-CR. Submitted on briefs December 18, 1992.—Decided January 20, 1993.*

(Also reported in — N.W.2d —.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ellen Henak,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *David J. Becker,* assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

ANDERSON, J. On this appeal, Christopher W. Hines maintains his confrontation rights were violated and the trial court erred when the court *sua sponte* sent to the jury a police report containing hearsay evidence from an informant who had not testified. We conclude that the trial court misused its discretion. The court did not consider whether the police report would aid the jury, would unduly prejudice Hines or could have been improperly used by the jury. Therefore, we reverse Hines' convictions and remand for a new trial.

A single individual robbed Smacker's Tavern in Kenosha and assaulted the bartender. The bartender called the police and gave a description of the robber to the patrol officers who responded to her call. The officers conducted a foot search of the area and encountered James Dobbins. The bartender identified Dobbins as the person who played pool with the robber in the tavern shortly before the robbery. At first Dobbins was averse to cooperating with authorities. Eventually he gave a statement that he and Hines had spent about one and one-half hours in Smacker's Tavern, and as they left, Hines commented about returning to rob the tavern. Besides Dobbins' statement, the police also had the bartender's identification of Hines from a second photo array, and based on this evidence Hines was charged.

The jury trial was somewhat short, lasting ten hours over two days. The state's witnesses included: the bartender; Dobbins, whose testimony was consistent with his statement; and Tamara Coleman, who testified that

she saw Hines in the tavern on the day of the robbery. Hines relied on an alibi defense. Hines' wife and two stepsons testified that Hines lived in Gary, Indiana and was there on the day of the robbery. In rebuttal the state presented a witness who testified that he saw Hines in Kenosha on the day after the robbery. In surrebuttal a defense witness testified that she did not believe Hines was in Kenosha during the month of the robbery.

After almost seven and one-half hours of deliberations the jury found Hines guilty. The trial court sentenced Hines to an indefinite term in prison of not more than nine years on the charge of robbery as a repeater, secs. 943.32(1)(a) and 939.62, Stats.; and a consecutive indeterminate term of not more than three years on the charge of battery as a repeater, secs. 940.19(1) and 939.62, Stats.

The issues Hines presents on appeal arose during the protracted jury deliberations. During deliberations a series of eight notes were sent from the jury to the trial court. The first four notes posed questions about the evidence presented during the trial. The fifth note asked if the jury could have cold sodas. The sixth note was sent approximately four hours after deliberations had begun and asked the trial court, "What happens if one person refuses to change their mind?" (Underlining in original.)[1]

The trial court waited more than an hour before having the jury brought to the courtroom and answering their questions. The court then gave the jury a modified *Allen* charge based on Wis J I—CRIMINAL 520. About

---

[1] The possibility that the jury could be deadlocked was not a surprise to the trial court. About ninety minutes earlier the jury had asked the bailiff what would happen if it could not reach a decision. The bailiff told the jurors that they should put their concern in writing for the court.

one hour later the jury sent out a seventh note asking for an exhibit that concerned the bartender's identification of Hines in the second photo array. Hines' counsel objected to sending the exhibit to the jury. He stated that it was "becoming more and more apparent that the jury [was] concentrating more on the police statements than on the testimony they heard during the course of the trial." Counsel asserted the jurors should rely upon their collective memory rather than unsworn statements. The trial court sent the exhibit to the jury over counsel's objection.

The court received the jury's eighth note almost seven hours after deliberations had begun. The note read, "We cannot come to a conclusion. We are definately [sic] at a standstill!" (Underlining in original.) In chambers the trial court informed the prosecutor and defense counsel that before sending the jury home for the evening the court would send all the exhibits to the jury. The court would ask the jurors to review the exhibits before they decided if they were deadlocked. Defense counsel objected. He suggested that the court send the jurors home for the evening and give them the exhibits when they returned the next morning. Counsel expressed his concern that the jurors were tiring and the only way to break the deadlock was to let them have a good night's sleep. The prosecutor did not have any preference.

Among the exhibits the court decided to send back to the jury was a report prepared by the investigating patrol officer several days after the robbery of Smacker's Tavern. The report was State's Exhibit 2 and read:

> On todays [sic] date I recieved [sic] information from an informant in ref to the armed robbery at Smackers Tavern.

Informant states that he knows the name of the other susp that robbed Smackers Tavern. Informant states that the susp lives at 4614 37 ave. Informant states that susp is above party Christopher Hines. Hines is married to Ruby Hines that lives at 4614 37 ave. Informant states that Ruby Hines [sic] maiden name was White and she could possilbly [sic] use that name. Informanant [sic] states that he saw both Chris Hines and other susp James Dobbins numerous times together during the day on 4/8/88.

Informant states that Hines left the area in the late afternoon. Hines is suppose [sic] to be in Indiana. Informant states that he left the area to cool down for awhile.

Informant states that all of Hines [sic] relatives will tell us that Hines left for Indiana on Thursday in the afternoon. Informant states that this is not true and can be verified by numerous witnesses in the area that saw Chris Hines. Informanat [sic] will provide me with more information if needed by our dept.

Defense counsel posed an objection to sending State's Exhibit 2 to the jury:

The problem with 2 is it has information here that clearly violates Mr. Hines' Sixth Amendment right to confrontation and that it contains a statement by an unknown informant and the jury is going to get that where he's clearly identified on this statement, and we have—there's absolutely no information as to who this unknown person is and that's a clear violation of the Sixth Amendment right to confrontation.

The trial court noted counsel's objection but held that the exhibits would be sent to the jury. Counsel expressed apprehension that the court's actions could be interpreted by the jury as an attempt to coerce a verdict. The court then agreed to instruct the jury that it was not

being forced to make a decision. Defense counsel acquiesced to this instruction.[2] Within thirty minutes of receiving State's Exhibit 2 and the court's supplementary instructions, the jury returned with guilty verdicts on both counts. Before entering judgment on the verdicts the trial court denied Hines' motion for a mistrial that was based on a violation of his sixth amendment right to confrontation. Hines appeals.

Whether an exhibit should be sent to the jury during deliberations is a discretionary decision for the trial court. *See State v. Larsen,* 165 Wis. 2d 316, 321-22, 477 N.W.2d 87, 89 (Ct. App. 1991). A court properly exercises its discretion when, in making a decision, it employs "a process of reasoning which depends on facts that are in the record or are reasonably derived by inference from the record, and yields a conclusion based on logic and founded on proper legal standards." *Id.* at 322, 477 N.W.2d at 89. (citation omitted). We will not reverse a discretionary decision if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision. *Prahl v. Brosamle,* 142 Wis. 2d 658, 667, 420 N.W.2d 372, 376 (Ct. App. 1987).

---

[2] The trial court instructed the jury:

I read your note, and before I would like you to come to that conclusion, I would ask that you take the remaining exhibits back to the jury room.

As I read in the earlier instruction, you are not going to be made to agree, nor are you going to be kept out until you do agree. But before you come to this ultimate conclusion that you cannot reach a decision, I would like you to examine the remaining exhibits. And if, you know, you do that in rapid manner and you still can't come to a conclusion, then I'll dismiss you. But I would like you to go back in with the rest of the exhibits and give it one more shot. Okay?

The state asserts that Hines has waived this issue by failing to object to the introduction of the evidence during the trial. The state concedes that State's Exhibit 2 contains hearsay evidence and was clearly objectionable on both hearsay and confrontation grounds. The state contends that Hines' objections on hearsay and confrontation grounds when the court decided to send the exhibit to the jury were too late. Hines counters that in the context of the testimony, the state offered the report for the limited purpose of explaining the steps the police took in investigating the robbery and assault and such a purpose was not objectionable. Hines argues that it was only after the court *sua sponte* decided to send the exhibit to the jury for its unrestricted review did the hearsay information in the exhibit become objectionable.

We acknowledge that State's Exhibit 2 was not admitted for any limited purpose during the trial. However, in the setting of the trial, it is evident that the sole purpose of the police report was to explain the patrol officer's attempts to identify the individual who had been with Dobbins at Smacker's Tavern the afternoon of the robbery. When the officer identified the report, the state did not inform the jury of the content of the report. When the state moved the admission of the report, it did not publish the report to the jury.

An objection by Hines to the admission of the report based on hearsay would have been inappropriate. The police report was not offered to prove the truthfulness of the informant's statements. It was offered for the limited purpose of explaining the actions of investigating officers. Since the report was not hearsay, any objection grounded on hearsay or confrontation rights would have been overruled. *See State v. Rutchik,* 116 Wis. 2d 61, 79, 341 N.W.2d 639, 648 (1984).

We are satisfied that Hines has properly preserved this issue by objecting to the exhibit on hearsay and confrontation grounds before the trial court sent it to the jury. Without any limiting or cautionary instructions, the jury could have considered the police report to prove the truth of the informant's out-of-court statements. Hines made an objection when he became aware of the objectionable nature of the "new" use of the report. *See Collier v. State,* 30 Wis. 2d 101, 104, 140 N.W.2d 252, 253 (1966). He advised the court of the basis of the objection and preserved his right of appeal. *See State v. Peters,* 166 Wis. 2d 168, 174, 479 N.W.2d 198, 200 (Ct. App. 1991).

A trial court's decision whether to send exhibits to the jury during deliberations is guided by three considerations: (1) whether the exhibit will aid the jury in proper consideration of the case; (2) whether a party will be unduly prejudiced by submission of the exhibit; and (3) whether the exhibit could be subjected to improper use by the jury. *State v. Jensen,* 147 Wis. 2d 240, 260, 432 N.W.2d 913, 921-22 (1988).

The trial court erred when it did not consider these three factors before sending the exhibit to the jury. Instead of analyzing State's Exhibit 2 after Hines had alerted the court to potential hearsay and confrontation problems, the court merely stated: "Well, your objections are noted and I'm going to send them back. So, I just don't know whether I should send it back with a note or not." The trial court's decision constitutes a misuse of discretion. However, we will not reverse the trial court if, after our independent review of the entire record, we can conclude that there are facts which would support the

court's decision had it properly exercised its discretion. *See State v. Johnson,* 118 Wis. 2d 472, 481, 348 N.W.2d 196, 201 (Ct. App. 1984).

We first consider whether State's Exhibit 2 would assist the jury in the proper consideration of the case. The overlying issue for the jury was the credibility of the witnesses, especially Hines' alibi witnesses. The state's witnesses placed Hines in Kenosha and implicated him in the robbery of Smacker's Tavern. Hines' witnesses gave him an alibi by testifying that he was in Gary, Indiana on the day of the robbery. The jury was presented with the classic question of whom to believe. While the statement contained in the exhibit certainly could have assisted the jury in its credibility determination, the statements were hearsay. It is not proper for a jury to be allowed to use objected to hearsay that does not fall within any exceptions to the hearsay rule.

"It is the function of the jury to determine where the truth lies in a normal case of confusion, discrepancies, and contradictions in [the] testimony of . . . witness[es]." *State ex rel. Brajdic v. Seber,* 53 Wis. 2d 446, 450, 193 N.W.2d 43, 46 (1972). The jury has the duty and responsibility to determine the credibility of witnesses based upon their testimony at trial, *Kohlhoff v. State,* 85 Wis. 2d 148, 155, 270 N.W.2d 63, 66 (1978), their demeanor on the witness stand, *Syvock v. State,* 61 Wis. 2d 411, 414, 213 N.W.2d 11, 13 (1973), and their interest or lack of interest in the result of the trial, their intelligence and the reasonableness of their testimony. *See Wilson v. State,* 184 Wis. 636, 645, 200 N.W. 369, 373 (1924). The hearsay statements in the police report were an external evaluation of the alibi witnesses' credibility. It was improper for the jury to have access to the

report when it was assessing the alibi witnesses' credibility.

We next consider whether Hines was unduly prejudiced by the submission of the police report to the jury. It is a general principle that it is inequitable to allow one side to make its case with written statements while requiring the other side to rely on the jury's recollection of oral testimony. *See State v. Jaworski,* 135 Wis. 2d 235, 242, 400 N.W.2d 29, 32 (Ct. App. 1986). In *Jaworski* , we approved the sending of written statements to the jury during deliberations. This case is significantly different from *Jaworski* in two respects. First, in *Jaworski* the court deleted any hearsay in the statements before sending the statements to the jury. *Id.* at 243, 400 N.W.2d at 32. Second, the trial court in *Jaworski* did not act on its own initiative. *Id.*

The prejudice to Hines arises because the hearsay statements in the exhibit bypassed the scrutiny of a probing cross-examination of the unknown informant, under oath in an open courtroom. Hines was prejudiced because the jury was deprived of an acceptable method of evaluating the truthfulness of the information in the report. *See State v. Gollon,* 115 Wis. 2d 592, 599-600, 340 N.W.2d 912, 915 (Ct. App. 1983).

Finally, we consider whether State's Exhibit 2 was improperly used by the jury. The jury's speedy settlement of its deadlock after receiving State's Exhibit 2 leads to the reasonable inference that the jury misused the exhibit. It is likely that the stalemate during the last three hours of deliberations focused on the diametrically differing testimony of the state and Hines and the credibility determination it was the responsibility of the jury

to make. Reaching a guilty verdict in approximately thirty minutes after receiving State's Exhibit 2 leads to the fair inference that the jury used the hearsay statements to resolve the credibility issues rather than the court's instructions on credibility which were patterned after WIS J I—CRIMINAL 300.

After our independent review of the record, we find no facts to support the trial court's decision to send State's Exhibit 2 to the jury. We therefore conclude that the trial court misused its discretion. *See Johnson,* 118 Wis. 2d at 481, 348 N.W.2d at 201. We reverse and remand for a new trial.[3]

*By the Court.*—Judgment reversed and cause remanded.

---

[3] Because we reverse and remand on the principal issue raised by Hines we will not address his argument that the trial court coerced a verdict by not accepting the jury's statements that it was deadlocked and compelling the jury to deliberate until it reached a decision. Also, it is not necessary for us to consider Hines' request for a new trial in the interest of justice.