STATE of Wisconsin, Plaintiff-Respondent,

v.

William R. BEDNARZ, Defendant-Appellant.†

Court of Appeals

*No. 92–2480–CR. Oral argument August 18, 1993.—Decided September 29, 1993.*

(Also reported in 507 N.W.2d 168.)

†Petition to review denied.

On behalf of the defendant-appellant, there were briefs and oral argument by *Paul Barrett* of *Barrett Law Offices* of Elkhorn.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Sharon Ruhly*, assistant attorney general. There was oral argument by *Sally L. Wellman* and *Steven J. Watson*.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J. This is an appeal from a misdemeanor battery conviction. It was converted into a three-judge case pursuant to sec. 809.41(3), Stats. The appeal concerns the *state's* use of expert testimony about the battered woman's syndrome to provide one possible explanation for the victim's recantation of her

original battery complaint. We affirm the trial court's ruling permitting this testimony.

On January 16, 1992, police responded to a domestic abuse call. Upon arrival, the police met Tamara Martner. She was crying and upset. Her lower lip was cut and swollen. She complained that her boyfriend, William R. Bednarz, struck her. Bednarz was subsequently arrested.

The police interviewed Martner at the scene and she completed a victim questionnaire. On the questionnaire, she stated that Bednarz had struck her and pulled her hair. Additionally, she made a tape recorded statement in which she described previous physical assaults, with the last prior assault occurring six months before. She feared he would injure her again because "that's just the way he is. He's violent. He's hit me before."

At Bednarz' initial appearance, a restraining order was issued, prohibiting any contact between Bednarz and Martner, including that he not be allowed to live in the apartment. However, at some point after the initial appearance, Martner received a letter from Bednarz describing his love for her and apologizing for the incident. Shortly after receiving the letter, Martner successfully lifted the restraining order. Bednarz then moved back into the apartment.

Martner then wrote two letters to the district attorney. The first letter told the district attorney that she may have made false or misleading statements to the officers. She claimed that one of the officers on the scene had been "suggestive in his line of questioning and intentionally omitted statements at his discretion in leu [sic] of a more favorable . . . response." In the second letter, she claimed that Bednarz had not shoved her, but that she had shoved him and that the officer

had altered the statement. She further asserted that Bednarz did not pull her hair. Rather, although his hand did grab her hair, he let go the second she screamed. She explained that she had awakened him, but he did not respond; she gave him a gentle shove and he was startled, flinging one hand up in the air and poking her in the mouth.

The district attorney elected to proceed to trial. Prior to trial, the district attorney sought a ruling from the trial court to allow expert testimony regarding Martner's recantation. He offered an expert on domestic violence to testify on the "cycle of violence" and on reactive behavior. Over objection, the trial court held that the expert testimony would be allowed.

At trial, the jury heard both of Martner's versions. The expert witness then testified on the "cycle of violence." She explained that the first part of the cycle is the "tension building" stage. The victim is seen as passive. The victim tries to please, walks on eggshells and does not want to rock the boat. The abuser is seen as jealous, accusatory, controlling, criticizing and demanding. The abuser often disciplines and isolates the victim.

The expert then testified that the second stage is the "explosion" stage. A battery is evidence of this stage. The expert then described the third stage as the "honeymoon" stage. The abuser often apologizes, sends gifts and love letters, blames other things or persons—such as alcohol or family pressures—and promises to change. The victim feels guilty and at fault for what happened. The victim simultaneously feels needed; the victim hopes for a change and believes that change will occur. The victim feels sorry for the abuser. The expert testified that during the honeymoon stage,

the victim may change her story in an attempt to exonerate the abuser.

The jury found Bednarz guilty of battery. His appeal is limited to whether the trial court misused its discretion in allowing the expert testimony. Bednarz makes three arguments. First, he argues that because the expert did not testify that Martner was a person exhibiting the battered woman's syndrome, the evidence was irrelevant. Second, he claims that there were insufficient facts to support each of the three stages in the cycle of violence. Third, he asserts that expert opinion testimony has no place in domestic abuse cases where there is enough evidence from the parties themselves to allow the jury to make a credibility determination. He contends that a reasonable juror can make a credibility determination without the assistance of an expert. At oral argument, his counsel agreed with reasoning that expert opinion testimony on battered woman's syndrome should be restricted to those cases where, for example, the alleged abuser was killed while sleeping and the victim needs the jury to understand that despite the fact that the abuser was sleeping, the victim still felt trapped, threatened and endangered. The reason for the need of expert testimony in such a situation is that the perception of the victim is normally outside the usual experience of the average juror. Bednarz' counsel argued that the "outside the usual experience" factor is not present in this domestic abuse case. We will discuss each issue in turn.

First, we reject Bednarz' assertion that the expert's opinion was irrelevant because the expert did not diagnose Martner as a person with battered woman's syndrome. In our view, had the witness so

testified, the opinion would have been reversible error. This is because the expert would be saying, in effect, that Martner recanted *because* she is a person with battered woman's syndrome. Such a statement would have been a comment that Martner's recantation was untrue. Under Wisconsin law, no witness, whether expert or lay, may testify "that another mentally and physically competent witness is telling the truth." *State v. Haseltine,* 120 Wis. 2d 92, 96, 352 N.W.2d 673, 676 (Ct. App. 1984).

The correct parameters of expert opinion testimony in this area were laid out in *State v. Jensen,* 147 Wis. 2d 240, 257, 432 N.W.2d 913, 920 (1988). The expert may describe the behavior of victims of the same type of crime. *Id.* The expert may also be asked to describe the behavior of the complainant. *Id.* Then the expert may be asked if the complainant's behavior is consistent with the behavior of other victims. *Id.*

Here, the expert testified about the behavior of victims of the same type of crime, but was not asked about the behavior of the complainant or for an opinion on consistency. Rather, it appears that the state was content to let the facts speak for themselves and have the jury determine whether Martner's behavior was consistent with the behavior of those who have the battered woman's syndrome. We hold that the use of the expert in this case did not run afoul of *Haseltine*; instead, it was well within the parameters of that case.

Second, we hold that there was sufficient evidence of the underlying characteristics for each of the three stages in the cycle of violence. Regarding the "tension building" stage, there is evidence of discipline and physical abuse in the past. The jury heard that

Bednarz had previously abused Martner for coming home late. This can also be viewed as evidence of isolation since it tends to show that Bednarz did not kindly approve of Martner being able to come and go as she pleased. There is also evidence that he was critical of her housekeeping. The fact that Martner stayed with Bednarz despite his past violence is evidence of her passivity.

Concerning the "explosion" stage, there is evidence of the battery. Regarding the "honeymoon" stage, there is evidence of Bednarz' apology, his sending flowers and his promise to change. There is also evidence of his expressing his love and need for Martner. As for Martner, there is evidence of her blaming herself for the incident and her recantation. We conclude that sufficient evidence exists to show that the expert opinion was relevant to the facts.

Third, we hold that expert opinion regarding a victim's recantation in domestic abuse cases is permissible. Wisconsin's expert testimony law is set forth in sec. 907.02, Stats., as follows:

> **Testimony by experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

While Wisconsin law exhibits fear of encroachment upon the function of the trier of fact, it does allow the rational approach of "assisting" the trier of fact to "understand the evidence" or to "determine a fact in issue." *Id.* Whether the situation is a proper one for the

use of expert testimony is to be determined on the basis of assisting the trier. As one commentator noted:

> There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

M. Ladd, *Expert Testimony*, 5 VAND. L. REV. 414, 418 (1952) (citation omitted). We disagree with Bednarz that the reasons behind Martner's recantation must be determined solely by use of common sense inquiry on the part of untrained lay people. The battered woman's syndrome is recognized as a subcategory of posttraumatic stress disorder. R. Schuller & N. Vidmar, *Battered Woman Syndrome Evidence in the Courtroom: A Review of the Literature*, 16 LAW & HUM. BEHAV. 273, 281 (1992). While there are various possible explanations for Martner's recantation, one explanation could be that the recantation is consistent with this form of posttraumatic stress disorder. An untrained lay person does not know that recantation can be suggestive of posttraumatic stress in the form of the battered woman's syndrome. The expert opinion was thus permissible to enlighten the jury and allow it to intelligently consider the syndrome as one possible explanation for Martner's behavior. *Accord State v. Borrelli*, 629 A.2d 1105, 1115 (Conn. 1993).

We are not insensitive to Bednarz' assertion that this decision opens the door to the prosecutor's use of expert testimony in all domestic abuse cases where there is a recantation. Bednarz' fear, however, begs the

question. The question is whether the expert testimony will "assist" the trier of fact. It may be common knowledge that parties to a relationship may say things about the other party which are untrue, especially in the heat of a domestic quarrel, only to tell the truth later. Yet, it is not common knowledge that one reason for a recantation may be the existence of battered woman's syndrome. *Id.* A trial court, in its discretion, may permit expert testimony concerning this subject matter as the facts in the case warrant. We conclude that the trial court did not misuse its discretion here.

*By the Court.*—Judgment affirmed.