STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronda RICHARDSON, Defendant-Appellant.

Court of Appeals

*No. 94–0105–CR. Oral argument September 26, 1994.—Decided November 23, 1994.*

(Also reported in 525 N.W.2d 378.)

419

On behalf of the defendant-appellant, there were briefs by *Katherine R. Kruse* and law students *Christo-*

*pher A. Shannon* and *Debra M. Stetka* of *Legal Assistance to Institutionalized Persons Program.* There was oral argument by *Debra M. Stetka.*

On behalf of the plaintiff-respondent, there was a brief by *James E. Doyle,* attorney general, and *Sharon Ruhly,* assistant attorney general. There was oral argument by *Sharon Ruhly.*

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J.   Ronda Richardson appeals her conviction of second-degree reckless homicide in the killing of her boyfriend. She contends that the trial court unfairly limited her expert's testimony regarding the battered woman's syndrome. While we agree with Richardson that the trial court erred by not allowing her expert to compare Richardson's characteristics with those who exhibit the battered woman's syndrome and reverse for a new trial on this ground, we reject her argument that the expert can offer an opinion on Richardson's state of mind at the time of the homicide.

The State charged Richardson with first-degree intentional homicide. She did not dispute stabbing and killing her boyfriend, David Miller. Her defense was that on the night of Miller's death, she was afraid he would kill her and therefore stabbed him in self-defense.

Prior to trial, Richardson filed a motion in limine seeking to introduce the expert opinion testimony of a doctor of psychology specializing in the treatment of battered women and other survivors of trauma. Richardson requested that the expert be allowed to describe the battered woman's syndrome to the jury, to explain the characteristics of the battering male and to compare Richardson's characteristics with those who show

battered woman's syndrome.[1] Richardson also sought to allow the expert to offer an opinion about Richardson's state of mind before, during and after the homicide regarding whether Richardson reasonably believed she was in imminent danger. The trial court granted Richardson's motion only to the limited extent that the expert could testify generally about the battered woman's syndrome without comparison to Richardson.

At trial, the testimony concerning the battered woman's syndrome can be summarized as follows. Battered woman's syndrome has two main components—"cycle of violence" and "learned helplessness." The cycle of violence is a three-stage circular process—a tension-building phase erupting into violence followed by a honeymoon stage where the batterer often apologizes and the victim forgives the batterer. The expert testified that the honeymoon phase is very seductive to the battered woman for staying in the abusive relationship. Over time, this cycle often "gets more intense, more repetitive, more frequent and more violent" and consequently more lethal.

The expert also testified that certain characteristics of battered women along with "learned helplessness" and fear of the unknown explain why battered women often do not leave their batterers. "Learned helplessness" is the theory that victims of repeated abuse will eventually abandon any efforts to leave the abusive situation. Common characteristics of battered women are low self-esteem, denial of anger

[1] The expert's examination of Richardson included several different tests and diagnostic tools, including a mental status evaluation, tests for personality and intelligence assessment, a social history interview, various projective tests and an inventory of domestic violence incidents and injuries.

and fear, feelings of guilt, social isolation, depression and the belief that no one can help them.

Richardson herself testified that throughout their relationship of several years, Miller beat her and threatened to kill her. She also testified that on the night she killed Miller, he kicked her, attempted to choke her and threatened to kill her. She testified that she was terrified he would kill her.

In addition to the first-degree intentional homicide charge, the trial court also submitted, inter alia, a lesser-included charge of second-degree reckless homicide. The jury was instructed regarding self-defense that if Richardson reasonably believed the force used was necessary to prevent imminent death or great bodily harm to herself, she was not guilty of any homicide offense. The jury found Richardson guilty of second-degree reckless homicide.

■

At the outset, we note that in Wisconsin, the admissibility of expert opinion evidence is assessed in light of § 907.02, STATS. *State v. Pittman*, 174 Wis. 2d 255, 267, 496 N.W.2d 74, 79, *cert. denied*, 114 S. Ct. 137 (1993). That section allows expert testimony if it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." Section 907.02, STATS. Expert testimony does not assist the fact finder if it conveys to the jury the expert's own beliefs about the veracity of another witness because such testimony usurps the jury's role. *Pittman*, 174 Wis. 2d at 267-68, 496 N.W.2d at 79. Whether expert testimony violates this standard is determined by examining the purpose for which the testimony is submitted and the effect of the testimony. *See State v. Jensen*, 147 Wis. 2d 240, 254 & n.3, 432 N.W.2d 913, 919 (1988) (citing *State v. Moran*, 728 P.2d 248 (Ariz. 1986)).

Determining whether expert testimony assists the fact finder is a discretionary decision of the trial court. *Pittman*, 174 Wis. 2d at 268, 496 N.W.2d at 79. We will uphold a trial court's discretionary decision if the trial court "examined the facts of record, applied a proper legal standard, and, using a rational process, reached a reasonable conclusion." *Id.* at 268, 496 N.W.2d at 79-80 (quoted source omitted).

First, we address the issue of whether the trial court misused its discretion by excluding expert testimony comparing Richardson with the profile of a battered woman. The trial court relied on *Jensen* to exclude the testimony, and concluded that such a comparison was prohibited as a matter of law "unless there are certain exceptions."[2]

The State argues that the comparison testimony is not admissible because such testimony would constitute a comment on the credibility of Richardson's assertion that she actually believed she was in danger at the time of the killing. In support of this argument, the State cites *Jensen* and *State v. Bednarz*, 179 Wis. 2d 460, 507 N.W.2d 168 (Ct. App. 1993), for the proposition that an expert may not testify to the veracity of another witness, nor to the guilt of the defendant. Conversely, Richardson argues that *Jensen* and *Bednarz* support admissibility because the excluded testimony would assist the jury to evaluate the reasonableness of Richardson's fear, without invading the jury's province to determine the historical facts. We agree with Richardson and hold that the trial court did not apply the proper legal standard when it concluded that *Jensen* prohibited the testimony.

---

[2] The trial court did not expound upon what those exceptions might be.

In *Jensen*, the trial court admitted into evidence the State's expert testimony about behavioral characteristics of child sexual abuse victims with a comparison to behavioral characteristics of the child complainant. *Jensen*, 147 Wis. 2d at 245, 432 N.W.2d at 915. The defendant argued that the admission was tantamount to an expert opinion that the complainant was telling the truth about the assault. *Id.* at 242, 432 N.W.2d at 914. Our supreme court disagreed and considered the purpose and effect of the testimony. The expert had not been asked to evaluate whether the complainant had been assaulted. *Id.* at 255, 432 N.W.2d at 920. Rather, the State submitted the testimony to establish the context within which the complainant revealed the assault and to rebut the defendant's suggestions that the complainant's postassault behavior was inconsistent with the claim that she was sexually assaulted. *Id.* at 257, 432 N.W.2d at 920. Our supreme court held that these facts supported admission of the expert testimony and noted that such testimony "may prevent false assumptions on the part of the factfinder regarding the meaning of the complainant's behavior and does not constitute an opinion about the guilt of the defendant." *Id.* at 249-51, 432 N.W.2d at 917-18.[3]

Our supreme court described the parameters of that expert testimony—that the expert may describe the behavior of the victims of the same type of crime, may describe the behavior of the complainant and then

[3] The supreme court held that an expert witness may give an opinion about the consistency of a complainant's behavior with the behavior of victims of the same type of crime only if the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *State v. Jensen*, 147 Wis. 2d 240, 257, 432 N.W.2d 913, 920 (1988) (citing § 907.02, STATS.).

may give an opinion about whether the complainant's behavior is consistent with the behavior of other victims. *Id.* at 257, 432 N.W.2d at 920. However, the supreme court cautioned that there is a risk that the jury could interpret such comparison testimony as an opinion that the complainant is being truthful and stated that "the expert witness must not be allowed to convey to the jury his or her own beliefs as to the veracity of the complainant with respect to the assault." *Id.* at 256-57, 432 N.W.2d at 920.

In *Bednarz*, we held that the *Jensen* parameters also applied to the admissibility of the State's use of expert testimony about the battered woman's syndrome to provide one possible explanation for the victim's recantation of her original battery complaint. *Bednarz*, 179 Wis. 2d at 465, 467, 507 N.W.2d at 171, 172. However, we gave a cautionary note similar to that expressed in *Jensen*. In *Bednarz*, the State did not offer the expert's testimony regarding whether the victim was a battered woman. We posited that such testimony would have been reversible error because it would have been a comment that the victim's recantation was untrue and therefore a comment on the defendant's guilt. *Id.* at 464-65, 507 N.W.2d at 171.

We hold that *Jensen* and *Bednarz* allow comparison testimony so long as it does not include the expert's *conclusions* about the battered person's actual beliefs at the time of the offense, about the reasonableness of those beliefs or about the person's state of mind before, during and after the criminal act. As the *Jensen* court itself indicated, comparison testimony is offered to "prevent false assumptions on the part of the factfinder." *See Jensen*, 147 Wis. 2d at 251, 432 N.W.2d at 918. We conclude that such testimony is more in the

nature of a mental health history, which if relevant is admissible to prove a defendant's state of mind. *See State v. Flattum*, 122 Wis. 2d 282, 302-03, 361 N.W.2d 705, 716 (1985). The comparison testimony excluded here would have provided a context from which the jury could understand why Richardson might perceive herself to be in imminent danger at the time of the killing and could assess whether such a belief would have been reasonable.[4] *See Developments in the Law—Legal Responses to Domestic Violence*, 106 HARV. L. REV. 1498, 1578-81 (1993); *see also State v. Walker*, 700 P.2d 1168, 1173 (Wash. Ct. App. 1985). The confrontational nature of an incident where a battered woman kills her abuser might only become apparent when viewed in the context of a pattern of violent behavior rather than as an isolated incident. *See State v. Felton*, 110 Wis. 2d 485, 509, 329 N.W.2d 161, 172 (1983).

The State concedes, and we agree, that to the extent the testimony is offered to support the reasonableness of Richardson's beliefs, the testimony would not have the same potential for being a comment on credibility as in the *Bednarz* situation.[5] We hold that

[4] We note that Wisconsin is among a large group of states allowing the admissibility of testimony comparing the defendant to battered woman's syndrome. *See, e.g., Fielder v. State*, 756 S.W.2d 309, 320-21 (Tex. Crim. App. 1988); *State v. Steele*, 359 S.E.2d 558, 563 (W. Va. 1987); *People v. Torres*, 488 N.Y.S.2d 358, 362 (1985); *State v. Kelly*, 478 A.2d 364, 378 (N.J. 1984); *Smith v. State*, 277 S.E.2d 678, 683 (Ga. 1981).

[5] The State also argues that the exclusion of the testimony comparing Richardson with the syndrome cannot be a misuse of discretion because the comparison testimony does not satisfy the threshold requirement that admissible testimony must be

comparison testimony should have been allowed in this case subject to the limitations described above.[6]

relevant, *see* § 904.02, STATS., and because the testimony is cumulative, *see* § 904.03, STATS. We disagree on both points. First, the record does not indicate that the trial court excluded the testimony for either reason. Moreover, we cannot conclude from the record that the excluded testimony would be cumulative. Although Richardson testified to her personal experiences of being battered, she did not, and likely could not, testify to "how other persons similarly situated . . . would react" to a pattern of domestic violence, which is one component of the jury's assessment of the reasonableness of her beliefs. *See State v. Felton*, 110 Wis. 2d 485, 509-10, 329 N.W.2d 161, 172 (1983). Thus, the comparison testimony is also relevant and helpful to the jury's assessment of the reasonableness of Richardson's belief that she was in imminent danger.

[6] We conclude that *Felton* provides further support for use of the comparison testimony here. Although the issue in *Felton* was not the admission of battered woman's syndrome evidence, our supreme court implicitly recognized the use of such testimony as relevant to a defense involving the reasonableness of a defendant's behavior. In *Felton*, the defendant was a battered spouse who killed her husband after a night of being beaten by him. At issue was whether the defendant's trial counsel was ineffective for failure to pursue the heat of passion manslaughter defense, § 940.05, STATS., 1981-82. To create an issue with respect to this defense, there must have been evidence that the defendant was provoked to the extent that the reasoning ability of an ordinary, reasonable person would be overcome with emotion and the provocation must have actually caused such a reaction in the defendant. *Felton*, 110 Wis. 2d at 508, 329 N.W.2d at 172. Referring to expert testimony from the postconviction motion hearing, our supreme court stated that to determine the reaction of an ordinary, reasonable person, it was proper "to consider how other persons similarly situated with respect to [the defendant's domestic violence history] . . . would react." *Id.* at 496-97, 509-10, 329 N.W.2d at 166, 172.

Because a retrial is necessary, we address Richardson's next argument. Richardson argues that the trial court erred in not allowing her expert to testify to her state of mind "before, during and after the stabbing," that is, whether she held a reasonable belief that she was in imminent danger. We hold that the expert may not give an opinion on whether the defendant held, at the time she killed the victim, a belief that she was in danger or whether that belief was reasonable because such testimony would be a comment on the credibility of the defendant's testimony and would constitute an opinion about Richardson's guilt. This is the nature of the testimony prohibited by *Jensen* and *Bednarz*.

The reason why it is prohibited is because evidence about Richardson's state of mind at the time of the homicide is a comment on what Richardson actually believed. Deciding exactly what was going on in Richardson's mind at the time of the killing is for the jury to determine, not the expert. Moreover, Richardson's state of mind or actual beliefs during the killing and the reasonableness of her beliefs during the killing are not matters within the expert witness's special knowledge. In *Steele v. State*, 97 Wis. 2d 72, 96-97, 294 N.W.2d 2, 13-14 (1980), our supreme court held that psychiatric testimony giving a conclusion about a defendant's capacity to form intent was not competent testimony in the guilt phase of a bifurcated trial. Our supreme court cited commentary that psychiatrists are no more qualified than lay persons to testify to a defendant's state of mind during the commission of an act causing death. *Id.* at 95, 294 N.W.2d at 12-13 (citing Frederick A. Fosdal, *Diminished Capacity, Intent and Psychiatric Testimony*, WIS. BAR BULL., Apr. 1979, at

17, 23-24 (quoting Memorandum from Professor Frank Remington, University of Wisconsin Law School (Aug. 11, 1978))).

Then, in *Flattum*, 122 Wis. 2d at 302-03, 361 N.W.2d at 716, our supreme court restated the holding of *Steele*, but added that mental health history if relevant is admissible to prove or disprove state of mind.

■

We hold that *Steele* and *Flattum* are analogous and control here. The reason for allowing expert testimony about battered woman's syndrome is to assist the jury in an area where its knowledge may be mistaken but where the expert has special knowledge. *See Jensen*, 147 Wis. 2d at 251, 432 N.W.2d at 918; *see also State v. Kelly*, 478 A.2d 364, 378 (N.J. 1984). The expert in battered woman's syndrome does not have special knowledge about the battered woman's state of mind during a homicidal act any more than the lay jurors. That a battered woman may exhibit certain characteristics from the psychological and physical abuse of battering is something that can be made known to the jury through the use of an expert witness. However, knowing those characteristics does not give the expert any special advantage in helping a jury determine whether the abuse cycle has escalated at the time of the homicidal act to a point at which the battered woman is in fear of imminent danger.

Here, the expert's area of special knowledge is the battered woman's syndrome and whether Richardson's personal characteristics are comparable; the expert is in no position, however, to comment upon Richardson's state of mind during the stabbing. The expert was not there and science has not yet produced the technology which allows experts to put themselves inside the person's head at the time an event took place. Thus, the

430

expert's conclusions about the reasonableness of Richardson's beliefs would usurp the jury's function rather than assist it. *See* § 907.02, STATS.

We hold that the expert may give an opinion about whether Richardson's behavior and characteristics are consistent with the battered woman's syndrome, as permitted by *Jensen* and *Bednarz*. Thus, the testimony could include whether Richardson exhibited such characteristics as low self-esteem, social isolation and "learned helplessness" and whether Richardson reported a history of abuse consistent with the "cycle of violence."

*By the Court.*—Judgment and order reversed and cause remanded for a new trial.