STATE of Wisconsin, Plaintiff-Respondent,

v.

Greg A. MAYER, Defendant-Appellant.†

Court of Appeals

*No. 97–3664–CR. Submitted on briefs May 18, 1998.—Decided June 2, 1998.*

(Also reported in 583 N.W.2d 430.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joseph E. Redding* of *Glojek Limited*, West Allis.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *David J. Becker*, assistant attorney general.

Before Cane, P.J., Myse and Hoover, JJ.

MYSE, J. Gregory Mayer appeals a judgment of conviction for battery resulting in substantial bodily harm, contrary to § 940.19(2), STATS., and an order denying postconviction relief. Mayer argues that the trial court erred by submitting a witness's statement to the jury during its deliberations and by allowing an expert to testify about battered woman's syndrome (BWS) when there was no evidence that the victim suffered from BWS. We first conclude that the witness statement was properly submitted to the jury because it aided the jury in proper consideration of the case, did not unduly prejudice Mayer, and was not likely to have been subjected to improper use by the jury. We next

conclude that the trial court did not err by admitting the expert's testimony. The court properly rejected Mayer's objection that the expert witness's testimony was not relevant, and Mayer has waived any other argument about that testimony by failing to bring such objection to the trial court's attention. The judgment and order are therefore affirmed.

Mayer committed a battery on his then-girlfriend and now-wife, Kathryn Radcliffe-Mayer, during a dispute at a bar. Mayer pushed Kathryn into an external wall of the bar two times, causing her to lose consciousness. Later that night, Kathryn contacted the police and charges were filed against Mayer. Kathryn's version was corroborated by her friend, Christine Ristow, who also provided the police with a written statement. Kathryn did not give a written statement.

At an initial court appearance, Kathryn recanted the version she initially told the police. Kathryn contended that her earlier version of events was one-sided because she wanted to get back at Mayer. Ristow, however, testified at Mayer's trial that the version of events both she and Kathryn initially told the police was accurate.

In order to assist the jury's understanding about why a domestic abuse victim might recant, the State introduced Beth Schnorr as an expert witness. When asked at trial whether Schnorr had "found in [her] work and in [her] field particular traits or behavior patterns that are, that tend to be consistent and observable in persons who are victims of domestic violence," Mayer objected as "irrelevant to the case." The objection was overruled.

After the objection, Schnorr's testimony arguably appeared to be directed more to women who suffer from BWS rather than to women who are victims of domestic

abuse but do not have characteristics of the syndrome. For example, Schnorr's responses several times referred to traits shared by "battered women." Mayer did not object to this testimony.

The trial lasted the greater part of one day. As the jury began deliberating, the issue arose whether the jury should be permitted to see Ristow's written statement. The State contended that the jury should be permitted to view the statement, noting that it had significance independent of merely restating Ristow's oral testimony. This was because during the trial Mayer had cast doubt on Ristow's credibility by alleging that she might have been intoxicated when she wrote the statement. The State argued that the statement itself could be used to reject the inference of Ristow's intoxication because the writing was coherent and neat. Mayer contended that it would be unfairly prejudicial to permit the jury to have the statement because the jury would likely place too great a weight on Ristow's version of events.

After hearing the parties' arguments, the trial court noted that while its content would be redundant, the statement was important because it shed light on other issues by informing on Ristow's coherence. The court's oral decision was interrupted by the bailiff, however, who had a request from the jury to view other exhibits. After the interruption, the court briefly concluded that it would submit the statement only if the jury specifically asked for it. The jury eventually did so, and its deliberations concluded about two hours later.

■

Mayer contended in his postconviction motions and on appeal that the trial court erred by submitting Ristow's written statements to the jury and by admitting Schnorr's expert testimony. Both claims of error

involve an allegedly erroneous exercise of discretion. *State v. Hines*, 173 Wis. 2d 850, 858, 496 N.W.2d 720, 723 (Ct. App. 1992) (submitting an exhibit is a discretionary decision); *State v. Richardson*, 189 Wis. 2d 418, 424, 525 N.W.2d 378, 381 (Ct. App. 1994) (admitting expert's opinion is a discretionary decision). We will uphold a trial court's discretionary decision if the trial court "examined the facts of record, applied a proper legal standard, and, using a rational process, reached a reasonable conclusion." *Id.* (internal quotations omitted). "We will not reverse a discretionary decision if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision." *Hines*, 173 Wis. 2d at 858, 496 N.W.2d at 723.

█ Mayer first argues that the trial court erroneously exercised its discretion by submitting Ristow's statement to the jury during deliberations. In deciding whether to submit a witness statement to a jury, a court should consider three factors: (1) whether the statement will aid the jury in proper consideration of the case; (2) whether a party will be unduly prejudiced by submission of the statement; and (3) whether the statement could be subjected to improper use by the jury. *See id.* at 860, 496 N.W.2d at 724. Mayer concedes that the statement assisted the jury, but claims that submission of the statement was unduly prejudicial because it gave the jury only the State's version of events while requiring them to rely on their memory of oral testimony for his version. Mayer further claims that submission of the statement could have been subjected to improper use by the jury because the jury had the exhibit throughout most of its deliberations.

We affirm the trial court's discretionary decision. Reviewing the transcript, it is clear that the trial court

did in fact exercise its discretion. It heard arguments from both sides, and began to state reasons supporting the jury's use of the statement. Further, although the trial court did not explicitly address all three factors listed in *Hines*, we can perceive a reasonable basis for its decision.

First, as Mayer concedes, the statement was of considerable use to the jury. Mayer attacked Ristow's credibility at the time she gave the statement based on her alleged intoxication. Ristow's writing was of considerable use to the jury in these circumstances. Based on the coherence and neatness of the statement, the jury could infer that Ristow was not intoxicated at the time she wrote it.

■

Second, Mayer was not unduly prejudiced by the trial court's submission of the statement. While we acknowledge that the "general rule" in Wisconsin is to read the statement to a deliberating jury rather than submitting it, that rule is not absolute. *See State v. Jaworski*, 135 Wis. 2d 235, 242–43, 400 N.W.2d 29, 32 ( Ct. App. 1986). Nor, in this case, would it have been sufficient to follow the general rule. The jury had a valid, independent need to physically examine the statement, and the trial court properly allowed it to do so.

In *Jaworski*, this court permitted written statements to be submitted to the jury where the statements did not contain hearsay or other improper evidence, and where the trial court did not unfairly emphasize one side's testimony by sending the statement to the jury on its own initiative. *Id.*; *see also Hines*, 173 Wis. 2d at 862, 496 N.W.2d at 725 (distinguishing *Jaworski* on those two factors). In the present case, there is no claim that the statement contained improper evidence,

and we note that the jury itself requested the statement. Further, we also note that the trial lasted only one day and the factual dispute was not complex. It is therefore unlikely that the jury would not be able to recall or process the testimony offered on Mayer's behalf. Under these circumstances, we are unwilling to conclude that Mayer was unduly prejudiced.

Finally, we disagree with Mayer's suggestion that the exhibit could be subjected to improper use by the jury. Mayer contends that the possibility is great that the jury gave the statement more weight than his and Kathryn's oral testimony because it had the statement throughout most of its deliberations. We conclude that this alone is insufficient to suggest improper use. First, as we have noted, the jury might have requested the statement simply to determine whether Ristow was intoxicated at the time she wrote it. Second, unlike *Hines*, the statement itself did not contain inadmissible evidence. Rather, it was "essentially no more than a repetition of the testimony the [witness] gave at trial." *Jaworski*, 135 Wis. 2d at 243, 400 N.W.2d at 32. Finally, we again note that the trial was fairly short, and the factual disputes were not complex. Therefore, it is not a fair inference that the jury based its resolution of credibility issues on the mere fact that it had Ristow's statement before it throughout most of its deliberations.

Having conducted an independent review of the record, we conclude that there are facts which support the court's decision. We therefore will not reverse its discretionary decision. *Hines*, 173 Wis. 2d at 861–61, 496 N.W.2d at 724.

Mayer next argues that the trial court erred by allowing expert testimony of BWS because there was

no evidence that Kathryn suffered from the syndrome. Although the trial court did not admit Schnorr as an expert expressly on BWS, Mayer claims that the trial court effectively did so by allowing her to testify as an expert on victims of domestic abuse generally. Based on his interpretation of *State v. Bednarz*, 179 Wis. 2d 460, 507 N.W.2d 168 (Ct. App. 1993), Mayer contends that an expert can testify about the common characteristics of victims of domestic abuse only when those characteristics result from BWS.

We disagree with Mayer's interpretation. In *Bednarz*, the court concluded that expert opinion regarding BWS and the victim's recantation was permissible because it met the requirements of § 907.02, STATS.[1] *Id*. at 467, 507 N.W.2d at 171–72. We interpret the case to mean no more than that an expert may testify about BWS where there is sufficient evidence that the alleged victim possesses the syndrome's characteristics and where such testimony is relevant. Because Schnorr was not offered to testify about BWS in Mayer's trial, *Bednarz* is of little value in this case.

Mayer attempts to attach greater value to the *Bednarz* holding by referring us to several statements of dicta in the opinion. First, the *Bednarz* court noted that it was "not insensitive to Bednarz' [sic] assertion that this decision opens the door to the prosecutor's use of expert testimony in all domestic abuse cases where there is a recantation." *Id*. at 467, 507 N.W.2d at 172.

---

[1] Section 907.02, STATS., provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise.

While we are aware that our decision will open the door still wider, we see no reason why that result should prevent us from affirming the trial court's decision. The admission of expert testimony is controlled by § 907.02, STATS., subject to the trial court's exercise of discretion. These provisions are sufficient to prevent a trial by experts while admitting expert opinion that will assist the jury in its consideration of the evidence.

Mayer also refers us to language in *Bednarz* suggesting that expert testimony will not assist the trier of fact when the incident of domestic abuse is an isolated one. In arriving at its conclusion that BWS expert opinion was admissible, the *Bednarz* court reasoned that "it is not common knowledge that one reason for a recantation may be the existence of [BWS]." *Id.* The court thus contrasted the different situation where "parties to a relationship . . . say things about the other party which are untrue, especially in the heat of a domestic quarrel, only to tell the truth later." *Id.* at 468, 507 N.W.2d at 172. The court stated that this latter situation "may be common knowledge." *Id.*

We see nothing in this language to prevent us from affirming the trial court's decision. Not only is the statement dicta and the issue explicitly left unresolved, the statement does not even address the point Schnorr was called to raise. Schnorr's testimony was the opposite of the situation described in the *Bednarz* dicta—that parties to a relationship may say things about the other party in the heat of a domestic quarrel which are initially true, only to recant. *Bednarz* simply does not prevent a trial court from admitting expert testimony on characteristics of domestic abuse victims when the requirements of § 907.02, STATS., are met.

██

At trial, Mayer's sole objection to Schnorr's testimony was that it was not relevant. Evidence is relevant if it makes a fact that is of consequence more or less probable. Section 904.01, STATS.; *State v. Peters*, 192 Wis. 2d 674, 689–90, 534 N.W.2d 867, 873 (Ct. App. 1995). Accordingly, Schnorr's testimony was relevant because it made more probable the existence of the fact that Kathryn's recantation was not trustworthy due to psychological factors. The trial court did not err by overruling this objection.

██

For the sake of clarity, we note that although relevant, Schnorr's testimony could only be admitted if she was properly qualified as an expert and if the evidence would assist the trier of fact. Section 907.02, STATS.; *Peters*, 192 Wis. 2d at 686, 534 N.W.2d at 872. Mayer did not, however, object on these grounds, nor did he attempt to voir dire Schnorr to determine whether a single assault was sufficient to allow her to conclude that common characteristics existing for the entire class of domestic abuse victims applied to Kathryn's behavior. Because Mayer raised no alternative basis for objection, we do not determine whether an alternate basis existed for the exclusion of this evidence. *See State v. Bustamante*, 201 Wis. 2d 562, 572–73, 549 N.W.2d 746, 750 (Ct. App. 1996).

Mayer's final contention is that the trial court erred by admitting Schnorr's testimony because her testimony dealt largely with characteristics of victims who suffered from BWS. We conclude that Mayer waived this argument by failing to object to this testimony. Mayer's only objection to Schnorr's testimony came after she was asked about common characteristics of victims of domestic abuse. The trial court

rejected the objection. Thereafter, Schnorr's testimony continued without objection.

While Mayer is correct that Schnorr should not have been permitted to testify about common characteristics of women suffering from BWS without a proper foundation, it was not the duty of the trial court to sua sponte strike the testimony. *See id.* at 572, 549 N.W.2d at 750. Rather, Mayer should have called to the trial court's attention any evidentiary concerns it had at the time. We will not review a decision to admit evidence when the evidence was admitted without an objection to the trial court. *Id.* at 573, 549 N.W.2d at 750.

*By the Court.*—Judgment and order affirmed.