# STATE of Wisconsin, Plaintiff-Respondent,

## v.

# Lew JENSEN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 86–1915–CR. Argued September 8, 1988.—Decided December 16, 1988.*

(Also reported in 432 N.W.2d 913.)

241

For the defendant-appellant-petitioner there briefs and oral argument by *Glenn L. Cushing,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *State v. Jensen,* 141 Wis. 2d 333, 415 N.W.2d 519 (Ct. App. 1987), affirming a conviction for sexual assault and affirming an order denying a motion for postconviction relief in the circuit court for Marathon county, Ronald Keberle, circuit judge. We affirm the decision of the court of appeals affirming the conviction.

The defendant raises two issues. First, the defendant asserts that the circuit court erred in admitting an expert opinion that the complainant's behavior was "consistent" with the behavior of children who are sexual abuse victims. The defendant asserts this opinion is tantamount to an expert opinion that the assault occurred or that the complainant was telling the truth about the assault. We conclude that the expert opinion cannot be interpreted as the defendant contends and that the circuit court did not err in admitting the expert witness's opinion in this case.

Second, the defendant asserts that the circuit court erred in allowing the defendant's written confes-

sion in the jury room during deliberations. We conclude that the circuit court committed no error, and we overrule prior case law that created a *per se* rule excluding confessions from the jury room.

## I.

We discuss first the defendant's assertion that admitting an expert witness's opinion as testimony was error. The complainant in this case is an 11 year-old girl, L.J. She alleges that her stepfather, the defendant, Lew Jensen, sexually assaulted her in March of 1985, while she was living with him and her grandmother. L.J. told a school counselor about the alleged assault three days after it happened, and he notified the police.

At trial, the defendant denied having any sexual contact with L.J. He testified that his former wife had left him for another man and taken L.J. with her to California. The defendant obtained a court order granting him temporary custody of L.J., went to California, and brought L.J. back to Wisconsin. The defense argued at trial that L.J. fabricated the sexual assault charge as part of a plan she concocted with her mother to enable L.J. to return to California.

In her testimony at trial, L.J. denied any such plan and stood by her original accusation. L.J. also testified that the defendant had sexual intercourse with her "a lot" prior to the assault in March of 1985 for which he was standing trial. L.J.'s mother testified that in the fall of 1984, L.J. told her about a prior incident. Another witness testified that L.J. told her privately about the March 1985 sexual assault. During cross-examination of L.J., however, defense counsel established that the child delayed telling some family

members about the alleged assault and that she told others nothing at all. L.J.'s grandmother and family friends testified that, when they asked L.J. about the defendant assaulting her, the child denied that anything had happened. Witnesses also testified that L.J. did not appear to be traumatized. This testimony was summarized at closing argument in support of the defense's theory that L.J. was lying about the assault.

Thomas Bosman, L.J.'s school guidance counselor, was the first person L.J. told about the alleged assault. At trial, he testified that he called L.J. into his office after L.J.'s teachers notified him that they had noticed marked changes in her behavior at school: "acting out in class, some noncompliance as far as doing homework, standards [sic] up to the teachers, being a little bit disrespectful and quite a bit of writing notes to boys, and boys writing notes to her." Mr. Bosman testified that L.J. had been wearing tight jeans and v-necked sweaters without an undershirt; had written "I love ———" (her "boyfriend's" name) on the back pocket of her pants; and had on one occasion pinched a boy's buttocks.

The instructor of the school's sex education class had reported to Mr. Bosman that L.J. asked precocious questions, such as whether it was possible to get pregnant by having sexual intercourse in a bathtub. Mr. Bosman himself had also observed that L.J. was noticeably nervous and anxious during the sex education class that dealt with sexual abuse.

Mr. Bosman testified that some "acting out" behavior was common among students in L.J.'s class. Mr. Bosman had determined, however, that, when viewed cumulatively, L.J.'s behavior amounted to a "red flag"—an indication that L.J. was experiencing an emotional or sexual problem.

Because of this "red flag" behavior, Mr. Bosman called L.J. into his office and informed her that he was concerned about the reasons for her recent behavior. He asked L.J. whether she had ever been sexually abused. Mr. Bosman testified that, in response to that question, L.J. slumped back in her chair and responded, "How did you know?"

In addition to describing the events that occurred at the school, Mr. Bosman also testified as an expert on the behavior of sexually abused children. Over the defendant's objections, the circuit court found the witness to be qualified by experience and training to testify as an expert about the behavior exhibited by sexually abused children. We agree with the court of appeals that the circuit court has discretion to determine whether a witness is an expert and that the circuit court in this case did not abuse its discretion. *State v. Jensen,* 141 Wis. 2d 333, 337, 415 N.W.2d 519 (Ct. App. 1988). See also *State v. Robinson,* 146 Wis. 2d 315, 431 N.W.2d 165 (1988).

The state asked Mr. Bosman to give his opinion whether L.J.'s behavior was consistent with the behavior of child sexual abuse victims. The defense objected, and the circuit court concluded that the witness could state whether the complainant's behavior was consistent with the behavior of children who were victims of sexual abuse.[1]

[1]The defendant asserts that "the evidence adduced in this case by witness Bosman is *similar* to that which has been described in other cases as 'rape trauma syndrome' evidence which generally consists of opinion evidence offered by an expert that the victim of an alleged rape is suffering from symptoms shared by all rape victims and is thus evidence that the victim in question was, indeed, sexually assaulted" (Defendant's Brief p. 14,

Whether an expert's opinion should be admitted into evidence is largely a matter of the circuit court's discretion. *Valiga v. National Food Co.,* 58 Wis. 2d 232, 251–52, 206 N.W.2d 377 (1973); sec. 907.02, Stats. 1985–86. The circuit court apparently reasoned that the reactions and behavior of sexually abused children are not ordinarily matters of common knowledge and experience and that the jury might therefore be aided by the witness's specialized knowledge in this area. Although L.J.'s "acting out" behavior is similar to the "normal" behavior of some adolescents, we agree with the circuit court that the expert witness's knowledge and experience might have assisted the jury in this case.[2]

The state proceeded with the direct examination of Mr. Bosman, as follows:

"Q: In your opinion, based on your experience, and based upon your training, are the kinds

---

emphasis added). Nevertheless, both the state and the defendant agree that the testimony in this case does not involve "rape trauma syndrome" or "child abuse syndrome" testimony and so we do not address the issue of the admissibility of this type of testimony. See *State v. Penigar,* 139 Wis. 2d 569, 588–89, nn. 12, 13, 408 N.W.2d 28 (1987).

[2]The authors of a recent publication by the National Institute for Justice specifically take note of "acting out" as a typical behavior pattern among sexual abuse victims, and suggest that "[t]he inappropriate language and pseudo-sexual, emotionally promiscuous, and highly sexualized conduct of such children can be given proper significance by lay persons when a person with wide experience in dealing with ordinary children states how unusual such behavior is." Whitcomb, Shapiro, Stellwagen, *When the Victim Is a Child: Issues for Judges and Prosecutors,* at 81 (N.I.J. 1985) (quoting D. Bross, "Protecting Child Witnesses," in *Multidisciplinary Advocacy for Mistreated Children,* at 197 (ed. D. Bross, National Association of Counsel for Children, 1984).

of acting out behavior that the teachers described to you that they were seeing in L——— consistent with children who were victims of sexual abuse?

"A: Yes.

"Q. The answer is yes?

"A. Yes. One of the, we call them in the workshops that I have attended, in the seminars that I have attended we call them red flags, they are indicators.

"Q: Of a problem?

"A: Of a problem. Dealing with sexuality, because it's an abnormal thing for a 11 or 12–year old student.

"Q: Is it also your experience, or you also know, you also have an opinion, I guess I should ask you, based on your experience and training that some children who are victims of sexual abuse do not tell anyone about it for a long period of time?

"A: Correct.

On Cross-examination, witness Bosman further testified:

"Q: So those things led you to conclude that she may have been—

"A. (Interposing) Not conclude, suspicion and belief.

"Q. Those are red flags?

"A. Yes. And particularly the time that we were talking about protective behavior in the classroom.

"Q. Were you in the classroom?

"A. Yes, I was.

"Q. And let me ask you a couple of questions. You indicated that children who had been victims of sexual abuse commonly or frequently exhibit the types of characteristics that you were aware of in L———, is that right?

"A: In not [sic] all cases. Frequently in cases you will see that type of person, withdrawn behavior, you will see oppressive behavior, you will see preoccupation with what you would call sexual type.

"Q: You also had occasion to see that in children who have not been sexually abused, however, is that true?

"A. Correct.

"Q. It is also true that the awareness of a child or the curiosities of a child about sexual matters does not indicate necessarily that she was a victim of sexual abuse?

"A. I suppose that would be true.

"Q. One more question. There are other avenues for children to become aware of sex than by the parents?

"A. Absolutely.

"Q. Among those would be experimentation with other children, is that true?

"A. Yes."

The jury returned a verdict convicting the defendant of first degree sexual assault in violation of sec. 940.225(1)(d), Stats. 1985–86, which proscribes sexual contact or sexual intercourse with a person 12 years of age or younger.

The court of appeals affirmed the conviction and the order denying postconviction relief, concluding that the circuit court committed harmless error by admitting expert testimony comparing L.J.'s behavior with the behavior of child sexual abuse victims.

On review the defendant challenges the admissibility of only one part of Mr. Bosman's testimony, namely, Mr. Bosman's comparison of L.J.'s "acting out" behavior with the behavior of child sexual abuse victims. The defendant objects only to the circuit

court's decision to admit the question, "In your opinion ... are the kinds of acting out behavior that the teachers described to you that they were seeing in L—— consistent with children who were victims of sexual abuse?" and the witness's answer, "Yes."

The defendant argues that this opinion testimony is inadmissible for two reasons. First, the defense claims that the testimony is tantamount to an expert opinion that the assault actually occurred. Second, the defense maintains that the testimony amounts to an expert opinion that the complainant was telling the truth about the assault.

The court of appeals agreed with the defendant's characterization of Mr. Bosman's testimony. *Jensen,* 141 Wis. 2d at 340. Relying on *State v. Haseltine,* 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984), the court of appeals concluded that the testimony was inadmissible because "an opinion that the complainant was sexually assaulted or is telling the truth is impermissible." *Jensen,* 141 Wis. 2d at 338.

Under Wisconsin law, a witness may not testify "that another mentally and physically competent witness is telling the truth." *Haseltine, supra,* 120 Wis. 2d at 96. In *Haseltine* the court of appeals held inadmissible an expert opinion that there was "no doubt whatsoever" that the complainant was an incest victim. *Haseltine, supra,* 120 Wis. 2d at 96. In *State v. Romero,* argued before this court on the same day of this case, we held that a witness could not testify that the complainant "was being totally truthful with us." 147 Wis. 2d 264, 277–78, 32 N.W.2d 899 (1988).

The state maintains that, under the rule set forth in *Haseltine,* Mr. Bosman's opinion testimony was properly admitted. The state argues that the testimony comparing L.J.'s behavior to the behavior of child

sexual abuse victims was offered to explain the context in which L.J. told Mr. Bosman about the sexual assault and to rebut the defense's suggestion that L.J. fabricated the sexual assault charge against the defendant. The state contends that the testimony was not offered as, and cannot be characterized as, an expert opinion that L.J. was assaulted or that L.J. was telling the truth about the assault. The state's brief acknowledges that such opinion evidence might well be prohibited as improper. State's Brief, p. 28.

We conclude that the facts of this case support the state's position.

First, Mr. Bosman's testimony was offered, in part, to explain the context in which L.J. told Mr. Bosman about the sexual assault. Mr. Bosman's description of L.J.'s behavior and his opinion that her behavior was consistent with the behavior of children who have been sexually abused were relevant to explain why his suspicions were aroused and why he questioned her. Mr. Bosman testified that L.J.'s conduct made him suspect the possibility of sexual abuse. He denied that he had reached the conclusion that she was being abused. In short, Mr. Bosman's testimony was elicited to explain the context in which L.J. made her allegation, not to prove the child had been assaulted.

Second, Mr. Bosman's testimony was relevant to rebut the defense's theory that L.J. fabricated the sexual assault charge against the defendant.

Expert testimony on the post-assault behavior of a sexual assault victim is admissible in certain cases to help explain the meaning of that behavior. See *State v. Haseltine, supra,* and *State v. Robinson, supra.* See

also *State v. Moran,* 151 Ariz. 378, 728 P.2d 248, 254 (1986), quoted at n. 3.

In *Robinson,* the court concluded that an expert may testify about his or her observations regarding the behavior of sexual assault victims when this testimony helps the jury understand a complainant's reactive behavior. The complainant in *Robinson* had been described as being "emotionally flat" after she was assaulted. The expert testified, on the basis of his experience, that it is common for victims of sexual assault to be emotionally flat. The court held that the circuit court correctly exercised its discretion in admitting the challenged testimony because the defendant had suggested to the jury that the complainant's being emotionally flat was inconsistent with her claim of sexual assault. We concluded that an expert opinion is useful for disabusing the jury of common misconceptions about the behavior of sexual assault victims. Expert opinion testimony in cases like *Robinson* may prevent false assumptions on the part of the factfinder regarding the meaning of the complainant's behavior and does not constitute an opinion about the guilt of the defendant. 146 Wis. 2d at 333.

As in *Robinson,* the defense in the case before us used the complainant's reactive behavior as support for its theory that the complainant lied about the assault. The defense offered a theory that the child's behavior at school was caused by her sojourn in California. L.J.'s unruly behavior and her false accusation against the defendant were, according to the defense, the result of living with her mother in California. The defense implied at trial that L.J.'s mother encouraged the child's undisciplined and sexually promiscuous "acting out." The defense also suggested that L.J. fabricated the charge to deflect

attention from her own misbehavior at school and to retaliate against the defendant's strict discipline.

The state sought to counter the defense's theory with an alternative explanation, namely, that L.J.'s behavior could have been a manifestation of emotional trauma caused by sexual assault.

Because a complainant's behavior frequently may not conform to commonly held expectations of how a victim reacts to sexual assault, courts admit expert opinion testimony to help juries avoid making decisions based on misconceptions of victim behavior. *State v. Haseltine, supra; State v. Robinson, supra.* In this case, Mr. Bosman's testimony was relevant because it provided information about behavioral characteristics of child sexual abuse victims that may have been outside the jurors' common experience. Mr. Bosman's testimony was relevant to counter the defense's explanation of the complainant's behavior and to provide the jury with an alternative explanation.

The defendant acknowledges that an expert may inform jurors about the reactive behavior of crime victims in order to disabuse the jurors of common misconceptions about the behavior of crime victims. The defendant, however, argues that Mr. Bosman's testimony was not admitted for, and did not accomplish, this purpose. The defendant attaches significance to Mr. Bosman's drawing a comparison between L.J.'s behavior and the behavior of child sexual abuse victims. The defendant suggests that Mr. Bosman's testimony might have been admissible if Mr. Bosman had merely enumerated the relevant behavioral characteristics of child sexual abuse victims without drawing a comparison to his own previous description

of L.J.'s behavior. The defendant appears to argue that the jury must be allowed to draw its own comparison between the behavior of child sexual abuse victims and that of the complainant in this case. As we stated earlier, the defendant maintains Mr. Bosman's comparison is the equivalent of an expert opinion that the complainaint was telling the truth about the assault and that the assault occurred.

In *Robinson* the defense presented its expert evidence in the manner suggested by the defense. The expert first described the complainant's conduct and then generally described the conduct of sexual assault victims. The jury was left to conclude whether the complainant's conduct was consistent with the conduct of victims of the same kind of crime.

While the defense is correct in noting a difference in the manner of presenting testimony in this case and in *Robinson,* we do not find that difference to be legally significant in the context of this case.

The defendant relies on an Arizona case, *State v. Moran,* 151 Ariz. 378, 728 P.2d 248 (1986), to support his contention that Mr. Bosman's testimony amounts to an impermissible opinion that the witness believed the crime occurred. In *Moran,* the Arizona Supreme Court held the following question and answer inadmissible:

> "Q: Doctor, overall were the findings that you got with regard to [the daughter] on these objective personality tests consistent with an individual who had in fact some kind of trauma like a molest [sic] occur early in life and were now simply reacting to that in adolescence?
> "A: Yes, it is consistent."

The Arizona court found this testimony to be inadmissible because "this type of particularized testimony permits the expert to indicate how he or she views the credibility of a particular witness." *Id.* at 255.

We conclude that the *Moran* holding is not applicable to this case because the testimony of the psychologist in *Moran* is different in both purpose and effect from Mr. Bosman's testimony. In *Moran* the psychologist testified that she was asked "to do an evaluation to ascertain whether or not *[she] felt [the daughter] has been sexually molested . . . ."* 728 P.2d at 255 (emphasis in original). The *Moran* court held that the psychologist concluded that the daughter had been molested and that this conclusion was "implicit in the balance of the witness's testimony." *Id.*

The *Moran* court decided that, under the circumstances of that case, the psychologist's opinion about the consistency of behavior amounted to an expression of her belief that the complainant in that case had been molested and was telling the truth about the assault. The *Moran* court recognized, however, that in other cases an expert's opinion that a complainant's conduct is consistent with the conduct of victims of the same type of crime might not be tantamount to testimony expressing the expert's own belief about the credibility of the complainant's testimony about the assault. *Id.* at 256.[3] We conclude that this case is such a case.

---

[3]In *State v. Moran,* the court distinguished between admissible and inadmissible expert testimony by examining the purpose for which the testimony was submitted and the effect of the testimony. The Arizona Supreme Court allowed experts to describe the behavior of victims of sexual abuse as a means of enabling the factfinder to evaluate the complainant's behavior.

Mr. Bosman's testimony in this case is significantly different from the psychologist's testimony in *Moran.* In this case, the expert was not asked to evaluate whether the complainant had been molested, nor did he explicitly or implicitly conclude that this complainant was a victim of sexual assault.

The jury in this case was free to draw its own inferences from Mr. Bosman's observation that the complainant's behavior was consistent with the behavior of child sexual abuse victims. The jury could have accepted Mr. Bosman's observation and viewed the consistency as one piece of circumstantial evidence that the assault occurred. Or the jury could have believed the defense's explanations of the complainant's behavior. Or the jury could have ignored the complainant's post-assault behavior altogether and relied on other evidence to determine the guilt of the defendant.

For the reasons set forth above, we conclude that the expert testimony in this case was not tantamount

---

Thus, the Arizona Supreme Court allowed the following testimony:

"Q: You mentioned that she [the complainant] appeared angry to you.
"A: Yes.
"Q: Is anger a typical response in adolescents for someone who has been subjected to sexual molestation?
"A: Yes, it is. They carry their anger on their shoulder like a flag. 728 P.2d at 253, n. 5."

This testimony was admissible, according to the *Moran* court, because the "[d]efendant claimed that the victim's accusations were prompted by anger over discipline imposed by her parents. Testimony providing the jury with an alternative explanation for the victim's anger was admissible to assist the jury in determining what had motivated the initial charges against defendant." 728 P.2d at 254.

to an opinion that the complainant had been assaulted or was telling the truth about the assault.

We conclude that the circuit court may allow an expert witness to give an opinion about the consistency of a complainant's behavior with the behavior of victims of the same type of crime only if the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. Section 907.02, Stats. 1985–86, authorizes the testimony of experts in the form of opinion or otherwise "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."

While an expert's description of the behavior of victims of crime may assist the jury to understand the evidence in the case or to determine a fact in issue, an expert may be no more qualified to compare behavior patterns than the jury. The jury may be able to draw the requisite inferences itself without the assistance of an expert. As the Federal Advisory Committee explained in adopting the federal counterpart to sec. 907.02, Stats., "[I]t seems wise to recognize that opinions are not indispensable and to encourage the use of expert testimony in nonopinion form when counsel believes the trier can itself draw the requisite inference." 59 Wis. 2d R207–208 (1973).

Moreover, when an expert witness's testimony includes the ultimate comparison, there is a risk that the jury could interpret the testimony as an opinion that the complainant is being truthful about the assault or that the assault occurred. In sum, the expert witness must not be allowed to convey to the jury his or her own beliefs as to the veracity of the

complainant with respect to the assault. *See, State v. Romero,* 147 Wis. 2d 264, 432 N.W.2d 899 (1988).

We conclude that an expert witness may be asked to describe the behavior of the complainant and then to describe that of victims of the same type of crime, if the testimony helps the jury understand a complainant's reactive behavior. See, *State v. Robinson,* 146 Wis. 2d 315, 431 N.W.2d 165 (1988). We further conclude that the circuit court may allow an expert witness to give an opinion about the consistency of a complainant's behavior with the behavior of victims of the same type of crime only if the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. Section 907.02, Stats.

For the reasons set forth, we conclude that the circuit court did not abuse its discretion in admitting Mr. Bosman's testimony. The testimony was submitted for the purpose of establishing the context within which the complainant revealed the assault and to rebut the defense's suggestions that L.J.'s reactive conduct after the assault was inconsistent with her claim of assault and evidence that she was lying. We do not believe the jury could have interpreted Mr. Bosman's testimony as constituting his opinion that L.J. was sexually assaulted or that she was telling the truth about the assault.

We add two final notes to clarify issues raised in the opinion of the court of appeals.

First, we should make clear that relevant facts regarding a complainant's behavior after an assault may be admitted as circumstantial evidence that an assault occurred. The state asserts that the court of appeals' statement that "a complainant's conduct may not be used to prove that an assault has occurred," 141

Wis. 2d at 339, is misleading and incorrect. The defendant acknowledges (Reply Brief p. 6) that the court of appeals' language "was not intended to preclude argument by the prosecutor as to the relevance or meaning of a complainant's subsequent behavior." We conclude, as did both parties, that facts related to a complainant's behavior after the assault may be admissible as an evidentiary link in the prosecutor's case.

Second, we do not endorse the court of appeals' suggestion that a hypothetical question be used. For a discussion of the disadvantages of hypothetical questions, see *Rabata v. Dohner,* 45 Wis. 2d 111, 129–134, 172 N.W.2d 409 (1969); McCormick, *Evidence,* sec. 16–17 (3d ed. 1984); 2 Wigmore, *Evidence,* § 686 (Chadbourne rev. 1979).

## II.

The second issue raised on appeal concerns the circuit court's decision to allow the jury access to the defendant's written confession during its deliberations. Relying on *State v. Payne,* 199 Wis. 615, 629–30, 227 N.W. 258 (1929), the court of appeals concluded that the circuit court erred in this case in sending the defendant's written statement into the jury room. The court of appeals also held, however, that the error was harmless "[b]ecause the focus of the controversy centered not on the substance of Jensen's confession but the circumstances under which it was given ...." 141 Wis. 2d at 343.

As the state requests, we take this opportunity to reexamine the *Payne* rule. The *Payne* court decided that a written confession should not be sent into the jury room because the court feared that the jury

would overemphasize the written statement in comparison to the oral testimony presented in the courtroom. The *Payne* court based its decision on the rationale used to preclude written depositions from being given to the jury. The theory is that depositions are testimonial in nature but different in form from the oral testimony of a courtroom witness, and thus they should not be allowed in the jury room because the jury might unduly emphasize the written deposition over other purely oral testimony in the case.

Written confessions are obviously testimonial in nature. Yet many jurisdictions permit written confessions to be taken into the jury room in criminal cases despite the generally accepted rule that written depositions are not submitted to the jury. These jurisdictions have apparently concluded that a jury should, in some cases, have access to a written confession because the confession is central to the case and because there are adequate safeguards built into the process of admitting confessions as evidence. See *People v. Caldwell*, 39 Ill. 2d 346, 236 N.E.2d 706, 714 (1968); A.B.A., III Standards for Criminal Justice, Standard 15–4.1(a), p. 15–118 (1980); McCormick, *Evidence*, sec. 217 at 681 (3d ed. 1984); 4 Wharton, *Wharton's Criminal Evidence* § 628 at 101 (14th ed. 1987).

Upon examination of the *Payne* case and more recent authorities, we conclude that the better rule is that a defendant's written confession should be treated like other exhibits. It is within the circuit court's discretion to determine what exhibits are permitted in the jury room. *Shoemaker v. Marc's Big Boy*, 51 Wis. 2d 611, 619, 187 N.W.2d 815 (1971). We conclude that the circuit court has discretion to send a written

confession to the jury. A circuit court's decision to send a written confession into the jury room should be guided by the same criteria as its decision to send other exhibits into the jury room, including consideration of whether the exhibit will aid the jury in proper consideration of the case, whether a party will be unduly prejudiced by submission of the exhibit, and whether the exhibit could be subjected to improper use by the jury.

We now examine the record to determine whether the circuit court abused its discretion in allowing the written confession to go to the jury in this case.

Upon initial questioning by police officers, the defendant denied L.J.'s accusation of sexual assault. Then, after the denial was put into typewritten form, the defendant confessed to the assault. The only copy of the defendant's original statement denying L.J.'s accusation was destroyed by the police after the defendant signed the subsequent statement confessing to the assault.

At trial, the defendant and the police officers gave conflicting testimony about the circumstances surrounding the interrogation and confession. The police officers testified that the confession was voluntarily given and that the defendant admitted that his original denial was untrue. The police chief testified that the defendant asked him to destroy the written denial statement and that the defendant was, in turn, promised that he would not be charged with obstructing justice.

The defendant testified that he gave the confession only because the police chief told him that he would lose custody of L.J. if he did not confess to the assault. The defendant also denied telling the police to destroy the earlier written statement.

Although the defendant and several police officers testified at trial, presenting their respective versions of the events at the police station, the confession itself was never read to the jury during the trial. Counsel and witnesses made only abbreviated references to the content of the confession. At the close of the trial, over the defendant's objection, the circuit court ordered the confession to be sent to the jury for use during deliberations, along with the other exhibits admitted during the trial.

Examining the facts in the case before us, we conclude that the circuit court did not abuse its discretion by allowing the defendant's written confession into the jury room. The circuit court stated that it sent the confession into the jury room because the court believed it could be helpful for the jury to examine a document that had been quoted at trial only in fragments. The circuit court determined that the confession would aid the jury in proper consideration of the case.

The confession in this case is two typewritten pages consisting of leading questions by a police officer and the defendant's responses, which were generally yes or no answers without much elaboration or detail. In the confession, the officer asked the defendant questions based on L.J.'s description of his conduct, and the defendant admitted to having sex with L.J. "once or twice" a month starting a "couple of years" earlier.

The content of the confession was not in dispute. The issue was credibility—the credibility of the defendant, of the police officers and of the complainant. We agree with the circuit court that the confession might have helped the jury determine whether the defen-

261

dant was being truthful when he claimed that by signing the confession he was merely saying what the officers wanted to hear. The defendant's denial at trial of the truth of the contents of the confession was clear and straightforward. The written confession in this case would not necessarily overemphasize the defendant's confession over the defendant's oral denial at trial. Under the circumstances of this case, we conclude that the circuit court did not abuse its discretion in allowing the confession in the jury room.

Although we are reformulating our rule regarding the appropriateness of allowing written confessions in the jury room, we do not find it necessary to remand this case for a new determination by the circuit court. Had we chosen to preserve the *Payne* rule, we would nonetheless have concluded that allowing the confession in the jury room was harmless error in this case for the reasons discussed above.

For the reasons set forth we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

DAY, J. (concurring). I concur in the result of the majority opinion affirming the conviction of the Defendant for sexual assault. However, I disagree with the statement in the majority opinion (majority opinion at 256–57):

> In sum, the expert witness must not be allowed to convey to the jury his or her own beliefs as to the veracity of the complainant with respect to the assault. *See State v. Romero,* 147 Wis. 2d 264, 432 N.W.2d 899 (1988).

For the reasons given in my dissent, Part II, in *State v. Romero,* issued this date, I would hold that an expert may give their opinion as to the truthfulness of young victims of sexual crimes, if in the opinion of the trial judge such expert's contact with the victim had been sufficient to permit such opinion testimony. It should be subject to an instruction that it is only an opinion and that the ultimate question of the truthfulness of a witness is for the jury to decide.

I am authorized to state that Justices DONALD W. STEINMETZ and LOUIS J. CECI join in this concurring opinion.