STATE of Wisconsin, Plaintiff-Respondent,†

v.

Joseph F. RIZZO, Defendant-Appellant.

Court of Appeals

No. 99–3266–CR. *Oral argument October 31, 2000.—Decided December 20, 2000.*

2001 WI App 57

(Also reported in 624 N.W.2d 854.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Franklyn M. Gimbel* and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown,*

243

Milwaukee. There was oral argument by *Kathryn A. Keppel*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jeffrey J. Kassel*, assistant attorney general, and *James E. Doyle*, attorney general. There was oral argument by *Jeffrey J. Kassel*.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. ANDERSON, J. Joseph F. Rizzo appeals from a judgment of conviction for three counts of second-degree sexual assault of a child contrary to WIS. STAT. § 948.02(2) (1997–98),[1] repeated sexual assault of the same child contrary to WIS. STAT. § 948.025(1), and party to the crime of intimidation of a victim with threat of force contrary to WIS. STAT. §§ 940.45(3) and 939.05. Rizzo offers two arguments on appeal: (1) the trial court's refusal to allow the defense to conduct an independent medical examination and its refusal to require the State to produce Dr. Linda Pucci's file violated Rizzo's constitutional rights, and (2) the trial court's admission of dissimilar and remote allegations of prior sexual misconduct by Rizzo constitutes an erroneous exercise of discretion. First, we will dispose of Rizzo's argument regarding the admission of other acts evidence. We will then address the dispositive issue of whether Rizzo's constitutional rights were violated. And, although we frame the issue differently, we agree with Rizzo that his constitutional rights to due process and to a fair trial were violated. We therefore reverse and remand for a new trial.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

## Facts and Analysis: Admission of Other Acts Evidence

¶ 2. Rizzo argues that the trial court's admission of other acts evidence constitutes an erroneous exercise of discretion. We disagree. Our supreme court has consistently held that in sexual assault cases, especially those involving assaults against children, the greater latitude rule applies together with the *Sullivan*[2] framework. *See State v. Davidson*, 2000 WI 91, ¶ 44, 236 Wis. 2d 537, 613 N.W.2d 606.

¶ 3. The greater latitude rule, first stated in 1893 in *Proper v. State*, 85 Wis. 615, 628–30, 55 N.W. 1035 (1893), *see Davidson*, 2000 WI 91 at ¶ 37, is a "general principle governing the analysis of whether the other crimes evidence at issue was properly admitted in the context of a sexual assault case." *Davidson*, 2000 WI 91 at ¶ 50. The effect of the rule is to allow a more liberal admission of other acts evidence in sexual assault cases involving child victims. *See id.* at ¶ 51.

¶ 4. The *Sullivan* three-step analytical framework is as follows:

> (1) Is the other acts evidence offered for an acceptable purpose under Wis. Stat. § (Rule) 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?
>
> (2) Is the other acts evidence relevant, considering the two facets of relevance set forth in Wis. Stat. § (Rule) 904.01? The first consideration in assessing relevance is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. The second consideration in assessing relevance is whether the evidence

---

[2] *See State v. Sullivan*, 216 Wis. 2d 768, 772, 576 N.W.2d 30 (1998).

has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence.

(3) Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay[,] waste of time or needless presentation of cumulative evidence?

*State v. Sullivan*, 216 Wis. 2d 768, 772–73, 576 N.W.2d 30 (1998) (footnote and citation omitted).

¶ 5. On appeal, the question is not whether this court would have admitted the other acts evidence, "but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." *Davidson*, 2000 WI 91 at ¶ 53 (citation omitted). "Thus, the trial court's exercise of discretion will be sustained if the trial court reviewed the relevant facts; applied a proper standard of law; and using a rational process, reached a reasonable conclusion." *Id.* In a written decision, the trial court properly applied the *Sullivan* three-step analysis:

The acts which took place some years ago are remarkably similar to the allegations before the Court in this case . . . [and the] evidence does tend to make the consequential fact or proposition more probable than it would be without it. It further can be relevant if used in regard to credibility of the child witness.

Finally, as to the probative value, the Court does not believe it is outweighed by undue prejudice, confusion of issues, or misleading of the jury or by considerations of undue delay waste of

time or needless presentation of cumulative evidence.

While these other acts may be chronologically old, they are very similar in nature.

The trial court did not err in deciding that "[t]he probative value in this case outweighs the danger of unfair prejudice." We hold that the trial court properly exercised its discretion in admitting the other acts evidence.

## Facts and Analysis: Rizzo's Constitutional Rights

¶ 6. Whether Rizzo's constitutional rights were violated is a threefold issue. First, for the reasons discussed below, we hold that the State, through Dr. Pucci, presented expert testimony at trial. Consequently, we must decide whether the State is shielded from the *Maday* rule. *See State v. Maday*, 179 Wis. 2d 346, 357, 507 N.W.2d 365 (Ct. App. 1993) (the State may not present expert testimony when the defendant is prevented from doing the same). The State argues that it is shielded because the expert testimony it presented was through an expert obtained by the victim and not by the State in anticipation of trial. Finally, we must determine whether Rizzo's constitutional rights were violated when the State reneged on its pretrial assurance that it would not put on the expert testimony of Dr. Pucci.

¶ 7. We conclude that the State put on expert testimony through Dr. Pucci because Pucci testified that the victim's behavior was consistent with the behavior of child victims of sexual abuse. An expert is asked an "expert opinion" if he or she is asked to testify whether the victim's behavior is "consistent" with the

behavior of children who are victims of sexual abuse. *See State v. Jensen*, 147 Wis. 2d 240, 245–46, 432 N.W.2d 913 (1998). At trial, Dr. Pucci, having acknowledged that the victim delayed reporting the alleged abuse for one year, testified "to a reasonable degree of psychological certainty" as to what the "most common reasons" are as to why someone who has been sexually abused might not immediately report the abuse.[3] Dr. Pucci cited a behavior displayed in the victim: her delayed report of the sexual abuse. Dr. Pucci then explained why victims of sexual abuse would behave in the same manner as the victim. We conclude that Dr. Pucci's testimony is tantamount to testimony offered to explain whether a victim's behavior is "consistent" with the behavior of children who are victims of sexual abuse. Dr. Pucci was asked for and gave her expert opinion.

¶ 8. When the State presented *Jensen* evidence through the expert testimony of Dr. Pucci, the *Maday*

---

[3] The exchange at trial was as follows:

[STATE]: Dr. Pucci, do you have an opinion as to a reasonable degree of psychological certainty why someone would not report a crime like this under these circumstances?

[DEFENSE]: Objection, your Honor.

[THE COURT]: It's overruled. The witness may answer.

[DR. PUCCI]: Could you repeat the question?

[STATE]: Do you have an opinion to a reasonable degree of psychological certainty why someone would, in this position, would not immediately report a crime like this?

[DR. PUCCI]: Often people are reluctant to report this kind of crime because of threats the offender or the abuser makes to them about it, either directly telling them not to tell or threatening them if they do tell. Often people are embarrassed. They may be afraid that they are not going to be believed. Sometimes they have some positive feelings about the abuser and may not want to get that person into trouble. Those tend to be the most common reasons.

rule was triggered. The *Maday* rule requires that a defendant be given the opportunity to discover the psychological condition of the victim in order to present meaningful evidence to counter the State's *Jensen* evidence. *See Maday*, 179 Wis. 2d at 357. The State acknowledges the rule established in *Maday*, but incorrectly argues that our holding in *State v. David J.K.*, 190 Wis. 2d 726, 528 N.W.2d 434 (Ct. App. 1994), shields it from the *Maday* rule.

¶ 9. In *David J.K.*, we held that the "psychological examination of the victim authorized in *Maday* is strictly limited to situations in which the prosecution retains experts in anticipation of trial in order to present *Jensen* evidence." *David J.K.*, 190 Wis. 2d at 735. We acknowledge that the victim *hired* Dr. Pucci; however, the State *at some point* retained Dr. Pucci as its witness and considered how it would use Dr. Pucci and what questions it would ask of her in anticipation of trial. Unlike the State, we do not read *David J.K.* to require that the State have *hired* the expert. We simply read the holding to indicate that whenever the State intends to present *Jensen* evidence through an expert it has *kept on hold* or *retained* in anticipation of trial, the *Maday* rule is triggered.

¶ 10. The State originally planned to present *Jensen*-type evidence and then, changing course, decided to play it "conservatively," offering assurance to the trial court and to Rizzo that it *would not* put on *Jensen*-type evidence through Dr. Pucci.[4] Based on the State's representation, the trial court denied Rizzo's

[4] The State said, "[I] am going to represent now, and will not intend on direct examination . . . [to] elicit expert *Jensen*-type testimony from Dr. Pucci. . . . If I do think it is necessary to elicit some *Jensen* testimony, I will call another expert and certainly

request[5] for an independent psychological examination of the victim.[6] At trial, the State reneged on its assurance: the State presented *Jensen*-type testimony through Dr. Pucci. At this point, Rizzo had no recourse. Trial had begun; there no longer existed an opportunity for Rizzo to request a *pretrial* independent psychological examination of the victim.

¶ 11. If the trial court had known that the State would present expert testimony of this kind, it could have made a pretrial ruling based on accurate information. Instead, the State, in giving the trial court pretrial assurance that it would not introduce *Jensen* evidence, thwarted the trial court's exercise of discretion to grant Rizzo's motion for a psychological examination of the victim. *Cf. Maday*, 179 Wis. 2d at 349–50 (trial court has discretion to grant a motion for a psychological examination of a victim when the State gives notice that it intends to introduce evidence gener-

---

put the Court and defense on notice with a curriculum vitae attached."

[5] The trial court stated, "On the representations made by the State, the Court agrees that [the defendant] [is] not entitled to any independent psychological examination."

[6] We note that Rizzo made several attempts to obtain discovery related to the victim's mental health treatment records. In response, the State directed Dr. Pucci, the victim's psychologist, to prepare a written summary report of her treatment of the victim. At the pretrial hearing, the trial court ruled that Rizzo could only have access to Dr. Pucci's written summary report and denied Rizzo access to Dr. Pucci's treatment records. We hold that when Dr. Pucci gave *Jensen*-type testimony, she went beyond the scope of her summary report. Thus, when Rizzo argued that he was entitled access to the treatment records in order to cross-examine Dr. Pucci, the trial court should have granted Rizzo's request. Instead, the trial court rejected Rizzo's argument and denied access to the records.

ated by a psychological examination of the victim by the State's experts). There remained no opportunity for the playing field to be leveled once trial had begun.

¶ 12. *Maday* is not an 'empty holding and the State may not present *Jensen*-type evidence when the defendant is prevented from doing the same. *See Maday*, 179 Wis. 2d at 357. This would give the State an improper strategic advantage and deprive the defendant of a level playing field. *See id.* A fair trial cannot be guaranteed by responsive mechanisms such as cross-examination and argument when the State relies on experts who have previously examined the victim. *See id.* at 355–57.

¶ 13. We hold that the requirements imposed by *Maday* were triggered when the State reneged upon its pretrial representation and presented *Jensen*-type evidence during trial. If this were not the case, *Maday* would be an empty holding indeed allowing the State to block a defendant's *Maday* rights simply by making a false pretrial representation, only to renege upon it at trial without consequence.

¶ 14. We therefore conclude that the State must make a pretrial representation if it intends to put on *Jensen*-type testimony. The State's failure to notify the trial court and Rizzo that it would offer *Jensen*-type testimony precluded the "level playing field" required under *Maday*. *See Maday*, 179 Wis. 2d at 357. A level playing field would have given Rizzo the pretrial right to an independent psychological examination of the victim. Instead, Rizzo lost his right to obtain access to relevant evidence necessary to be heard in his own defense. Rizzo's constitutional rights to due process and to a fair trial were denied.

251

*By the Court.*—Judgment reversed and cause remanded with directions.