State of Wisconsin, Plaintiff-Respondent,
v.
Scott A. Rudoll, Defendant-Appellant.
No. 03-3481-CR.
Court of Appeals of Wisconsin.
Opinion Filed: September 8, 2004.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1 PER CURIAM.
Scott Rudoll appeals judgments of conviction on four counts, the most serious of which is a second-degree sexual assault charge and the focus of this appeal. Rudoll contends the trial court erred by denying his request for access to the victim's psychological and school records and by allowing one of the State's expert witnesses to testify. We discern no error and affirm the judgments.

Background
¶2 In March 2002, the State charged Rudoll with three counts of second-degree sexual assault, a class C felony contrary to WIS. STAT. § 948.02(2),[1] and one count of first-degree sexual assault, a class B felony contrary to WIS. STAT. § 948.02(1). Each count related to a separate victim. After various procedural motions, the first-degree charge was dismissed and the remaining counts were severed for trial. Rudoll first proceeded to trial on the second-degree assault charge of victim Phillip B.
¶3 The relevant background is as follows.[2] Rudoll allegedly assaulted Phillip during one or more camping trips in September through November 2001. Phillip did not make a police report until February 2002. At the preliminary hearing, Phillip denied at least one of the instances in which he had previously claimed Rudoll had touched his genitals, contradicting the report he had given to police. Then, between the preliminary hearing and trial, Phillip evidently spent significant time reviewing the first statement he had given to police. At trial, Phillip's teacher, Linda Hansen, testified that Phillip's classroom behavior deteriorated in the fall of 2001 before improving during the spring of 2002. This time frame coincided with the span between the alleged assault and Phillip's report to police. Phillip's parents also testified regarding his behavior problems in this interval. The State's expert witness, Dr. Anna Salter, testified that children who are victims of sexual assaults sometimes have behavioral problems that improve upon reporting; that it is not unusual for victims to "backslide," or recant their allegations; and that some, especially boys assaulted by men, delay reporting because they develop a fear of homosexuality.
¶4 Rudoll anticipated the general testimony and sought pretrial access to Phillip's psychological and school records. Following an in camera examination of both sets of records, the trial court denied Rudoll's requests. Rudoll also sought to preclude Salter's testimony, arguing the State had only advised that she would testify about delayed or partial reporting, not about backsliding or a fear of homosexuality. The court allowed Salter's testimony.
¶5 The jury convicted Rudoll on the second-degree sexual assault charge. Rudoll then pled no contest to three other counts which, pursuant to the plea agreement, were amended to a class D felony and two misdemeanors. The State capped its sentencing recommendation at a ten-year sentence consisting of four years' initial confinement and six years' extended supervision.
¶6 On the sexual assault charge, the court sentenced Rudoll to a twentyfive-year sentence consisting of ten years' initial confinement and fifteen years' extended supervision. Rudoll also received a seven-year sentence on the class D felony and nine-month sentences on each of the misdemeanors, all to be served concurrent to the sexual assault sentence. Rudoll appeals.

Discussion

I. Access to Phillip's Psychological Records
¶7 Rudoll sought access to Phillip's psychological records, alleging they might contain evidence of Phillip's prior inconsistent statements and differing recitations of the events, as well as evidence that Phillip had memory problems. The court, following an in camera review of the records, denied the request, stating it had found no relevant evidence in the file. Rudoll challenges that determination. The State is satisfied with the result, but argues that Rudoll did not make a sufficient threshold showing to warrant the in camera review.[3] We agree with the State.
¶8 Psychological treatment records are privileged. WIS. STAT. § 905.04(2). However, there are competing rights and interests involved when a defendant seeks access to these records. State v. Robertson, 2003 WI App 84, ¶12, 263 Wis. 2d 349, 661 N.W.2d 105. The statutorily created privilege must be balanced against the defendant's constitutional right to a fair trial. State v. Shiffra, 175 Wis. 2d 600, 609, 499 N.W.2d 719 (Ct. App. 1993).
¶9 As such, the defendant seeking access to another's records has the burden of making a preliminary evidentiary showing before the court conducts an in camera review. State v. Green, 2002 WI 68, ¶20, 253 Wis. 2d 356, 646 N.W.2d 298. The defendant must "set forth, in good faith, a specific factual basis demonstrating a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence and is not merely cumulative ...." Id., ¶34. The defendant must explain how the evidence is relevant and supports the particular theory of defense, and the evidentiary showing must be based on more than mere speculation or conjecture. Id., ¶33.
¶10 We review factual findings made by the court in this respect under the clearly erroneous standard. Id., ¶20. However, whether the preliminary evidentiary showing was sufficient to warrant an in camera review implicates a defendant's constitutional right to a fair trial and therefore presents a question of law that we review de novo. Id. If in camera review is granted, the records must contain independently probative, non-cumulative evidence before they will be released. Id., ¶34; Shiffra, 175 Wis. 2d at 611.
¶11 Rudoll's motion for accessa Shiffra motionstated he was seeking evidence that Phillip had memory problems. The basis for this is a statement by Phillip's mother to Rudoll's investigator that Phillip was "going to read over and over the police report" so he could "memorize his statement." According to Rudoll, this "seems to suggest that [Phillip's] mother has some reason to believe that [Phillip] has difficulty with his memory and/or perception of the truth ...." Then, at the motion hearing, Rudoll argued he would "be looking for mostly ... inconsistent statements or indications that the kid has given a different version or that he's having difficulty recalling things, statements to that effect ... I anticipate there being inconsistent statements."
¶12 Neither of these assertions constitutes "a specific factual basis demonstrating a reasonable likelihood that the records contain relevant information ...." Green, 253 Wis. 2d 356, ¶34. First, Rudoll fails to demonstrate any nexus between Phillip's attempts to memorize his statement and the contents of the psychological records. A witness's conventional trial preparation does not support a reasonable inference that the witness has a material "difficulty with his memory." Rudoll merely speculates as to the existence and cause of any memory problems and has offered no factual basis from which we should conclude the psychological records contain any diagnosis relative to or discussion of Phillip's faculties relative to memory. Moreover, Rudoll's claim that Phillip's mother believes Phillip has memory issues bears no relationship to the psychological records. Phillip's mother's hypothesized beliefs are most appropriately addressed by cross-examination, and Rudoll neglects to explain why that would be insufficient to raise the memory issue.
¶13 As far as inconsistent statements are concerned, again, Rudoll failed to proffer a specific factual basis that demonstrated it was reasonably likely that the psychological records contained evidence of these inconsistencies. Moreover, Rudoll had access to the police report initially filed as well as Phillip's preliminary hearing testimony. There is no showing how the psychological records are independently probative and non-cumulative of other evidence already available. Id. Thus, Rudoll fails to meet the standard for in camera review and it was unnecessary for the court to have reviewed them at all and we therefore need not address the matter further.

II. Access to Phillip's School Records
¶14 As part of its case against Rudoll, the State presented testimony from one of Phillip's teachers, Linda Hansen. She indicated that she observed Phillip's behavior deteriorate in fall 2001. She also testified that she began to observe improvement in spring 2002. Because Hansen's timeline coincided with the time of the alleged assault and the report to police, Rudoll sought access to Phillip's school records, believing it was "extremely likely" the records contained relevant evidence, such as documentation of Phillip's emotional problems. Following an in camera inspection, the trial court denied Rudoll's request.
¶15 A student's school records are made confidential by WIS. STAT. § 118.125(2) and access to them is governed by WIS. STAT. § 118.125(2)(f), which states:
Pupil records shall be provided to a court in response to subpoena by parties to an action for in camera inspection, to be used only for purposes of impeachment of any witness who has testified in the action. The court may turn said records or parts thereof over to parties in the action or their attorneys if said records would be relevant and material to a witness's credibility or competency. (Emphasis added.)
¶16 Thus, to warrant in camera review, it is not necessary to show a "specific factual basis" that the pupil records contain relevant information in the same way Shiffra requires a threshold showing for obtaining review of psychological records. However, the standard of review should be the same: a determination of relevancy is reviewed for clear error while the court's decision to admit or exclude evidence following in camera review is discretionary. See Solberg, 211 Wis. 2d at 386. A "court properly exercises its discretion when it applies the relevant law to the facts and reaches a reasonable conclusion." Id.
¶17 Here, the trial court "looked at every page of them, and I don't find any relevant evidence in there that would help the jury decide any of the issues of fact in this case. ... He's a young man who has some educational needs; that's it." Rudoll claims the court erroneously exercised its discretion by applying the Shiffra rule of independently probative, non-cumulative evidence instead of applying the statutory framework of relevancy to witness credibility.
¶18 However, Rudoll would have us search for the following in Phillip's school records:
(1) a documented history of emotional difficulties preexisting the allegations made against Rudoll;
(2) explanations, other than the alleged acts of Rudoll, offered as the bases for those emotional difficulties;
(3) interventions, after the allegations against Rudoll, which would offer an alternative explanation for P.B.'s improvement in the Spring of 2002.
¶19 Rudoll does not explain how any of that information would be useful for impeachment of any witness's credibility or competency under the statute. He was mostly concerned with using this information against Hansen. However, she was asked to testify only about her personal observations of Phillip starting around late summer or early fall of 2001 and ending in the spring of 2002. She was not asked to diagnosis any emotional problem with Phillip, pre-existing or otherwise; she was not asked to suggest a clinical cause for his behavioral or emotional problems;[4] and she was not asked about any "treatment" or interventions for those emotional problems.
¶20 Instead, Rudoll seeks evidence more akin to information that would indeed be sought under a Shiffra analysis. He suggests we will find information that might be independently probative of a defense theory that something other than a sexual assault occurred to impact Phillip's behavior.
¶21 Ultimately, however, we conclude the trial court properly exercised its discretion under either test. We have reviewed Phillip's school records and determine that they detail educational accommodations and routine performance reviews related to a diagnosed learning disability. There are no indications that Phillip was ever diagnosed as emotionally disturbed. Under Shiffra, there is nothing independently probative of any matter in dispute. Applying WIS. STAT. § 118.125(2)(f), there is nothing with which to assail the competency or credibility of any witness, including the teacher with whom Rudoll was primarily concerned.

III. Testimony of Dr. Anna Salter
¶22 Rudoll contends the trial court erred in allowing psychologist Dr. Anna Salter to testify. He claims the State violated WIS. STAT. § 971.23(1)(e)[5] by failing to adequately provide complete notice of the scope of Salter's proposed testimony.[6] He also claims that Salter's statistical evidence amounted to testimony that Phillip was telling the truth. Whether an expert's opinion should be admitted is largely left to the trial court's discretion. State v. Jensen, 147 Wis. 2d 240, 246, 432 N.W.2d 913 (1988). We conclude the trial court properly exercised its discretion in permitting Salter to testify on the subjects at issue.

A. Incomplete Disclosure
¶23 Rudoll was advised that "Dr. Salter is an expert in children who have been victims of physical and sexual abuse. ... Dr. Salter is going to testify about how children report abuse, which includes but is not limited to delayed reporting and is often reported in parts rather than as a whole." Rudoll contends that, given this notice, it was improper to allow Salter to testify about "backsliding" and fear of homosexuality.
¶24 Although "delayed reporting" was the only subtopic specified, Rudoll was advised that Salter's testimony would be about how children report abuse, including but not limited to, delayed and partial reporting. Backsliding and a fear of homosexuality[7] are also subtopics of reporting; backsliding explains variations in a victim's reports and fear of homosexuality explains delays in making reports. We therefore disagree with Rudoll's contention that he received inadequate notice of the scope of Salter's testimony.
¶25 Moreover, Rudoll fails to demonstrate any prejudice from allowing Salter's testimony. See State v. Schroeder, 2000 WI App 128, ¶9, 237 Wis. 2d 575, 613 N.W.2d 911. Although he claims he was precluded from preparing a rebuttal witness, he includes no offer of proof as to how a rebuttal witness would bolster his defense or undermine Salter's testimony. See id.

B. Statistical Evidence
¶26 Salter provided statistical evidence of the following: most children do not report sexual abuse immediately; reporting is lower among males, especially those who develop a fear of homosexuality; and almost eighty percent of victims deny some elements of the abuse at some point. She then explained the likelihood that a victim will display anxiety, depression, anger, or other "clinically significant pathology" following the sexual abuse. She also stated that some children's behavior improves following disclosure of the incident. Because Salter's testimony so closely tracked Phillip's actions and behaviors, Rudoll contends Salter's testimony amounts to an expert opinion that Phillip was telling the truth.
¶27 Under Wisconsin law, no witness may testify "that another mentally and physically competent witness is telling the truth." State v. Haseltine, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984). However, an expert
may be asked to describe the behavior of the complainant and then to describe that of victims of the same type of crime, if the testimony helps the jury understand a complainant's reactive behavior. ... We further conclude that the circuit court may allow an expert witness to give an opinion about the consistency of a complainant's behavior with the behavior of victims of the same type of crime only if the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.
Jensen, 147 Wis. 2d at 257 (internal citations omitted). Whether an expert provided admissible Jensen testimony involves applying a set of facts to a particular legal standard, a question of law that we review de novo. See State v. Rizzo, 2002 WI 20, ¶18, 250 Wis. 2d 407, 640 N.W.2d 93.
¶28 Here, Salter testified generically about the behavior of sexual assault victims. Her testimony related various statistical results obtained by professional studies.[8] She never mentioned Phillip during direct-examination by the State. On cross-examination, Salter admitted she had not seen or evaluated Phillip, she knew nothing about any outside factors in his life, and she had not been asked to testify about any specific person. Rudoll nonetheless contends Salter "deemed every aspect of [Phillip's] behavior to be consistent with a truthful version of a sexual assault." We disagree.
¶29 Part of Rudoll's defense was that some other emotional problems or external factors could explain Phillip's behavior. He also attempted to make the jury doubt Phillip's veracity by highlighting Phillip's multiple versions of events. However, because a victim's behavior frequently may not conform to commonly held expectations, courts allow expert testimony to help juries avoid making decisions based on misconceptions of victim behavior. Jensen, 147 Wis. 2d at 252.
¶30 To eliminate these misconceptions, Salter established the behaviors statistically most likely to be observed in victims of sexual assault. In closing, then, the State argued that Salter had given the jury "all of that information, which is consistent with what happened inside of this case with [Phillip]." This allowed the jury to evaluate "the consistency of [Phillip's] behavior with the behavior of victims of the same type of crime," not Phillip's truthfulness. That Salter was able to use statistics rather than generalities such as "some," "many," or "most" does not take her testimony outside the realm of permissible Jensen expert testimony.
By the Court.  Judgments affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Additional facts will be added as necessary in the discussion section.
[3] Rudoll moved for access on November 12, eight days before the scheduled start of the trial. At a motion hearing on November 18, the State argued Rudoll had not made the threshold showing, but it had nonetheless arranged for the court to receive the records. The day after the hearing, the court orally ruled on the motion, stating simply:

Counsel is seeking relevant information from those records and I'm trying to make a ruling so counsel will know what's going on here today.
I have reviewed the records, so I guess I have granted your motion to have the in camera inspection, and my reading of those records leads me to believe that there is nothing relevant that would  should be released to anybody for use at trial.
[4] On cross-examination, Rudoll asked her whether changes in the teacher-student ratio or other changes between summer school and the school year might account for Phillip's difficulties. Hansen stated it was possible. The school records, however, contain no information about these changes.
[5] Specifically, WIS. STAT. § 971.23(1)(e) requires the State provide:

Any relevant written or recorded statements of a witness ... including ... any reports or statements of experts made in connection with the case or, if an expert does not prepare a report or statement, a written summary of the expert's findings or the subject matter of his or her testimony ....
[6] In his reply brief, Rudoll argues the violation of WIS. STAT. § 971.23(1)(e) arose because the State never provided a written summary of Salter's testimony. In his main brief, however, his argument was that the notice was incomplete. We generally do not consider issues raised for the first time in the reply brief. See Henry v. General Cas. Co., 225 Wis. 2d 849, 868 n.10, 593 N.W.2d 913 (Ct. App. 1999). While there is a motion in the record to exclude Salter's testimony on "failure to give reasonable notice"that is, timelinessgrounds, it appears this motion was withdrawn. Then, at the motion hearing regarding Salter's testimony, Rudoll acknowledged being informed that she would testify about delayed and partial reporting and sought to limit her testimony to those topics. Rudoll did not raise an objection based on § 971.23(1)(e) or otherwise seek to prohibit Salter's testimony. We therefore conclude any claim of error regarding written notice has been waived. See State v. Davis, 199 Wis. 2d 513, 517, 545 N.W.2d 244 (Ct. App. 1996) (unobjected-to evidentiary errors are generally considered waived).
[7] This is perhaps better described as the victim's fear that the assault means he or she is a homosexual, not a fear of homosexuality in general.
[8] For example, Salter testified:

There's a study by Salazar, which found that about twenty-four percent of the kids reported in less than a week, another twentyone percent reported in less than a year, seventeen percent took more than a year and thirty-nine percent never reported ....
....
In a study by Sorenson and Snow, of one hundred and sixteen confirmed cases, it turned out that only eleven percent of kids when they reported said the whole thing and stuck to it. Seventy-nine percent denied some elements of the abuse at some point ....
....
In the Johnson & Shrier study, two thirds of the boys reported adverse impact. In the Finkelhor study they scored lower on sexual self[-]esteem. Terry found that they were insecure about their masculinity. Ceci found at six months that fifty percent of the kids were symptomatic.